[No. C036202. Third Dist. Dec. 18, 2002.]

CALIFORNIA YOUTH AUTHORITY, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent;
RANDY HENDERSON, Real Party in Interest and Respondent.

**[Opinion certified for partial publication.\*]**

---

 \*Pursuant to Rule 976.1 of the California Rules of Court, this opinion shall be published
with the exception of part II of the DISCUSSION.

## COUNSEL

Howard Schwartz and Marguerite D. Seabourn for Plaintiff and Appellant.

Elise S. Rose and Karen J. Brandt for Defendant and Respondent.

Christine Albertine and Benjamin C. Sybesma for Real Party in Interest and Respondent.

## OPINION

**SIMS, J.**—Appellant California Youth Authority (CYA) dismissed real party in interest Randy Henderson from his job as a senior youth correctional counselor, for neglect of duty and other charges arising from the disappearance and homicide of a subordinate employee, youth correctional counselor Ineasie Baker. CYA believes Baker was killed by a ward (who has been charged with her murder), and Henderson failed to investigate after hearing her arguing with the ward.

Henderson contested his dismissal, and, after hearing evidence, an administrative law judge (ALJ) issued a proposed decision allowing CYA to

dismiss Henderson. However, the State Personnel Board (SPB) did not adopt the ALJ's proposed decision but instead issued its own decision revoking Henderson's dismissal.

CYA appeals from the trial court's denial of CYA's petition for a writ of administrative mandamus seeking to overturn the SPB's decision.[1] CYA contends SPB's findings are not supported by substantial evidence in light of the whole record, and, in measuring the evidence, this court must pay special deference to findings of the ALJ based on witness credibility. We requested supplemental briefing on the potential applicability of a statute not cited by the parties—Government Code section 11425.50, which requires a reviewing court to give great weight to certain credibility determinations in administrative adjudications. (Undesignated statutory references are to the Government Code.)

In the published portion of the opinion, we shall conclude section 11425.50 applies to credibility determinations by an ALJ in SPB administrative adjudications of employment disciplinary actions (§ 19570 et seq.), but the ALJ in this case did not make the type of credibility determinations that would trigger section 11425.50. Thus, in reviewing the administrative record for substantial evidence, we shall not give special weight to the credibility determinations of the ALJ.

We shall also conclude that, in evaluating the substantiality of the evidence in this appeal, we shall consider all relevant evidence in the administrative record, including evidence that fairly detracts from the evidence supporting the agency's decision.

In an unpublished portion of the opinion applying these rules, we shall conclude that substantial evidence supports the SPB's determination. We shall therefore affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

Henderson began working for CYA in 1978 and in 1989 achieved the classification of senior youth counselor (now known as senior youth correctional counselor). At the time in question, he was assigned to the "C/D Company" at CYA's Heman G. Stark Youth Training School (the facility) in Chino, California.

On August 9, 1996, youth counselor Baker, who was also assigned to C/D Company at the facility, worked a 5:00 a.m. to 1:00 p.m. shift, as shift

---

[1]The SPB did not file a respondent's brief in this appeal, but did file a supplemental letter brief at our request, as discussed *post*.

coordinator. Henderson worked the 1:00 p.m. to 9:00 p.m. shift that day. He was Baker's relief, but he did not make verbal or visual contact with her that day. He did, however, hear Baker's voice, the circumstances of which are in dispute.

The following day, August 10, 1996, Baker's family phoned the facility around 4:00 a.m. and again at 7:20 a.m., because Baker never returned home on August 9.

Evidence was adduced at Henderson's administrative hearing regarding conversations which were held throughout the day (August 10, 1996) in which staff discussed the situation and during which Henderson stated he had heard Baker's voice around 1:00 p.m. on August 9. According to Henderson, he was walking down the hall toward his office when he heard Baker's voice speaking loudly, which was not unusual for her. According to Henderson, that was the only time he heard Baker's voice that day. According to some other participants in the August 10 conversations, Henderson commented on August 10 that when he heard Baker's voice on August 9, he was in the control center, and when he made the comments on August 10 he demonstrated that when he heard Baker's voice on August 9 he leaned over to look down the hallway, did not see anything, and went back to his paperwork. The witnesses also said Henderson said he heard Baker arguing with someone and her voice stopped abruptly in midsentence.

It is undisputed, however, that whatever Henderson said on August 10 did not cause any immediate reaction among those participating in the conversations (though some later testified they thought to themselves at the time that Henderson should have investigated).

Also on August 10, 1996, it was discovered that Baker's car was still in the parking lot. It was then discovered that she had not picked up her overtime check, her purse was still in supervisor Rivera's office, and her chewing gum was discovered outside her locker. A ward had fresh scratches on his face.

About 8:45 a.m., the facility was placed on "lockdown," and a search commenced. Baker was not found.

On August 11, 1996, her dead body was found in a trash dump site in Pomona, California.

In April 1997, CYA sent to Henderson a notice of adverse action dismissing him from his position as a senior youth counselor effective April 15,

1997, for the following causes under the following subdivisions of section 19572:

"(d) Inexcusable neglect of duty.

"(e) Insubordination.

"(f) Dishonesty. [¶] . . . [¶]

"(m) Discourteous treatment of the public or other employees. [¶] . . . [¶]

"(o) Willful disobedience. [¶] . . . [¶]

"(t) Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to the appointing authority or the person's employment."

The notice of adverse action alleged as follows:

Henderson failed to relieve Baker properly at the end of her shift on August 9, 1996, by failing to make verbal and visual contact with her. Henderson failed to investigate Baker's well-being in response to circumstances which should have caused him to investigate, in that (1) after Baker failed to report to work on August 10, 1996, Henderson commented to others that he had heard Baker engaged in a verbal confrontation with a ward the previous day and her voice had stopped in mid-sentence; and (2) within one-half hour of the end of Baker's shift on August 9, 1996, two employees had inquired as to her whereabouts because they had not seen her leave through the recreation yard as was her usual routine.

The notice of adverse action also alleged Henderson was dishonest during an administrative interview with CYA investigators on December 26, 1996, in that he denied hearing or saying he heard the verbal confrontation between Baker and a ward. It alleged Henderson failed to write an incident report as directed and was dishonest in denying that a supervisor told him to write an incident report. The notice alleged that when a supervisor instructed Henderson to maintain an accurate accounting of his on-duty staff's whereabouts at all times, he refused to be responsible and refused to keep track of "grown folks." It was also alleged that Henderson offered to bet another employee $100 that search dogs would not find any evidence in the room of the ward who at that time was suspected of being involved in Baker's disappearance.

In response to the notice of adverse action, Henderson requested an administrative hearing before an ALJ.

After the administrative hearing, the ALJ in November 1998 issued a proposed decision to sustain CYA's dismissal of Henderson. The ALJ determined Henderson inexcusably neglected his duty by failing to make visual or verbal contact with Baker at the end of her shift and by failing to investigate after he heard Baker's voice abruptly stop while speaking to a ward, particularly after two workers asked where she was because they had not seen her leave. The ALJ also concluded Henderson was dishonest in the investigative interview, and he was insubordinate and willfully disobedient in failing to comply with his supervisor's instructions. Thus, the ALJ's proposed decision was to sustain CYA's dismissal of Henderson.

However, SPB at its November 17, 1998, meeting rejected the ALJ's proposed decision and asked the parties to brief various issues, including (1) whether any written directive required Henderson to make contact with Baker at the beginning of his shift, (2) whether any written directive required Henderson to investigate when he heard Baker involved in an argument, and (3) what is the appropriate penalty.[2]

Both parties submitted written argument and presented oral argument before SPB on April 6, 1999.

The SPB issued a decision revoking Henderson's dismissal.

SPB thereafter denied CYA's petition for rehearing.

In April 2000, CYA filed in the trial court a petition for a writ of administrative mandamus (Code Civ. Proc., § 1094.5) requesting the court to find SPB's decision unsupported by substantial evidence and to command SPB to set aside its decision.

The trial court denied the writ petition, stating that after "full consideration of the evidence," it ruled "[SPB] wrote a very careful and good decision. There is substantial evidence to support [SPB's] findings of credibility and fact." The court accordingly entered judgment in favor of Henderson.

CYA appealed.

We shall first discuss the appropriate standard of review to be applied by this court.

We shall then recite the raw evidence adduced at the administrative hearing before the ALJ.

---

[2]Other issues presented to the SPB are not at issue in this appeal.

We shall then summarize the SPB's decision.

Finally, we shall discuss and reject CYA's contention that no substantial evidence supports the SPB's decision.

DISCUSSION

I. *Standard of Review*

A. *This Court Determines Whether Substantial Evidence Supports the Decision of the SPB*

When a state civil service employee contests disciplinary action, "the board [SPB] or its authorized representative" shall hold a hearing. (§ 19578, subd. (a).)

Whether the hearing is held by SPB itself or its authorized representative, it is SPB which renders the decision. Thus, section 19582 provides in part:

"(a) Hearings may be held by the board, or by any authorized representative, *but the board shall render the decision* that in its judgment is just and proper. [¶] . . . [¶]

"(b) If a contested case is heard by an authorized representative, he or she shall prepare a proposed decision in a form that may be adopted as the decision in the case. . . .

"(c) If the proposed decision is not remanded or adopted as provided in subdivision (b), each party shall be notified of the action, and *the board itself may decide the case upon the record, including the transcript, with or without taking any additional evidence*, or may refer the case to the same or another authorized representative to take additional evidence. . . . The board itself shall decide no case provided for in this subdivision without affording the parties the opportunity to present oral and written argument before the board itself. If additional oral evidence is introduced before the board itself, no board member may vote unless he or she heard the additional oral evidence." (Italics added.)

█ SPB may revoke the appointing power's imposition of discipline for one of three reasons: (1) the evidence does not establish the fact of the alleged cause for discipline; (2) the employee was justified; or (3) the cause for discipline was proven but is insufficient to support the level of punitive action taken. (*Larson v. State Personnel Bd.* (1994) 28 Cal.App.4th 265, 274 [33 Cal.Rptr.2d 412].)

■ SPB is a "statewide administrative agency which is created by, and derives its adjudicatory power from, the state Constitution. (Cal. Const., art. VII, §§ 2 [membership and compensation of board], 3 ['(a) The board shall enforce the civil service statutes and, by majority vote of all its members, shall . . . review disciplinary actions'] . . . .) Under that constitutional grant, [SPB] is empowered to 'review disciplinary actions.' In undertaking that review, [SPB] acts in an adjudicatory capacity. 'The State Personnel Board is an agency with adjudicatory powers created by the California Constitution.' [Citation.] As such [SPB] acts much as a trial court would in an ordinary judicial proceeding. Thus, [SPB] makes factual findings and exercises discretion on matters within its jurisdiction. On review the decisions of [SPB] are entitled to judicial deference. The record must be viewed in a light most favorable to the decision of [SPB] and its factual findings must be upheld if they are supported by substantial evidence. [Citation.]" (*Department of Parks & Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813, 823 [284 Cal.Rptr. 839]; see also *Larson v. State Personnel Bd., supra,* 28 Cal.App.4th 265, 273-274; Cal. Administrative Mandamus (Cont.Ed.Bar 2d ed. 1989) Scope of Review Under CCP § 1094.5, § 4.139, pp. 184-186 [agencies authorized by California Constitution to exercise adjudicatory powers].)

■ The parties agree this appeal is governed by Code of Civil Procedure section 1094.5, subdivision (c), which provides "abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (c).)

Our scope of review on appeal from such a judgment is identical to that of the trial court. (*Boreta Enterprises, Inc. v. Department of Alcoholic Beverage Control* (1970) 2 Cal.3d 85, 94-95 [84 Cal.Rptr. 113, 465 P.2d 1].)

On appeal, "[w]e apply the substantial evidence test in reviewing a decision of the board [SPB]. [Citation.] We do not reweigh the evidence; we indulge all presumptions and resolve all conflicts in favor of the board's decision. Its findings come before us 'with a strong presumption as to their correctness and regularity.' [Citation.] We do not substitute our own judgment if the board's decision ' " " 'is one which could have been made by reasonable people. . . .' [Citation.]" ' " (*Camarena v. State Personnel Bd.* (1997) 54 Cal.App.4th 698, 701 [62 Cal.Rptr.2d 775]; accord, *Department of Parks & Recreation v. State Personnel Bd., supra,* 233 Cal.App.3d at pp. 831-832.)

"Substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. (*Hosford v. State Personnel Bd.*

(1977) 74 Cal.App.3d 302, 307 [141 Cal.Rptr. 354].) Such evidence must be reasonable, credible, and of solid value. (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633 [29 Cal.Rptr.2d 191].)

B. *This Court Reviews the Whole Record, Including Evidence That Detracts from the Findings of SPB*

As summarized in a treatise on administrative mandamus:

"Before 1970, courts generally held that application of the substantial evidence test in [Code of Civil Procedure] section 1094.5 cases required the agency's findings on evidentiary questions to be upheld if substantial evidence, contradicted or uncontradicted, supported the findings. [Citation.]

"In 1970, the [S]upreme [C]ourt made it clear that the so-called isolation test (*i.e.*, isolating evidence supporting the agency's findings and disregarding conflicting relevant evidence in the record) was outmoded and that the substantial evidence test requires the trial court to review the entire record. [Citing inter alia *Boreta Enterprises, Inc. v. Department of Alcoholic Beverage Control, supra,* 2 Cal.3d 85, 94, which involved the Department of Alcoholic Beverage Control, an agency constitutionally endowed with adjudicatory powers.]

"In reaffirming that the trial court must review the entire record when the substantial evidence test is involved, the [S]upreme [C]ourt in [*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242]], cited *Universal Camera Corp. v. [Labor Bd.]* (1951) 340 US 474 [71 S.Ct. 456, 95 L.Ed. 456], which according to the court in *Neely v. California State Personnel Bd.* (1965) 237 [Cal.App.2d 487, 489, 47 Cal.Rptr. 64], had not been adopted in California. Assuming that the rule in *Universal Camera* now fully applies in California, as appears from the holding in *Bixby,* 'a court reviewing the evidentiary basis of an agency's decision must consider all relevant evidence in the administrative record including evidence that fairly detracts from the evidence supporting the agency's decision.' [Citations.]" (Cal. Administrative Mandamus, *supra,* Scope of Review Under CCP § 1094.5, § 4.162, pp. 205-206.)

*Bixby v. Pierno, supra,* 4 Cal.3d 130, which reviewed a decision of the Commissioner of Corporations subject to substantial evidence review rather than independent judgment review, specified in a footnote that the case then before the court did *not* involve an agency upon which the Constitution had conferred adjudicative powers. (*Id.* at p. 141, fn. 7.) However, *Bixby* was at that point merely explaining that the separation of powers doctrine provides

for both independent judgment and substantial evidence review; it was not creating different substantial evidence standards for agencies with constitutional powers. (*Id.* at p. 141.) *Bixby* went on to say in another footnote: "Code of Civil Procedure section 1094.5 required the trial court to consider 'the whole record' in reviewing the evidentiary basis for the administrative decision. [Citations.] The trial court in the present case indicated that it attempted to isolate only the evidence which supports the board's findings and thus disregarded relevant evidence in the record. [Citations.] . . . In *Boreta* [*supra*, 2 Cal.3d 85] we adopted a substantial evidence review of the entire record for all administrative proceedings under section 1094.5 which do not require an independent judgment approach." (*Bixby, supra,* 4 Cal.3d at p. 149, fn. 22 [any error by trial court in using isolation approach was harmless].) As indicated, *Boreta* involved an agency upon which the Constitution has conferred limited judicial powers. (*Boreta, supra,* 2 Cal.3d 85, 94.)

Thus, the California Supreme Court, in rejecting the "isolation approach," did not limit its holding to administrative agencies not constitutionally endowed with adjudicative powers.

We continue to believe we were correct when we said in *Newman v. State Personnel Bd.* (1992) 10 Cal.App.4th 41 [12 Cal.Rptr.2d 601]: "In assessing whether substantial evidence exists, we consider all evidence presented, including that which fairly detracts from the evidence supporting the Board's determination." (*Id.* at p. 47, citing *County of San Diego v. Assessment Appeals Bd. No. 2* (1983) 148 Cal.App.3d 548, 554 [195 Cal.Rptr. 895].)

Henderson cites our opinion in *Washington v. State Personnel Bd.* (1981) 127 Cal.App.3d 636 [179 Cal.Rptr. 637]. We there said that in reviewing an SPB decision, " '[t]he court may not take into account whatever evidence detracts from the weight of other evidence.' " (*Id.* at p. 640.) However, the authority we cited for that proposition (*Pereyda v. State Personnel Bd.* (1971) 15 Cal.App.3d 47, 50 [92 Cal.Rptr. 746]) relied upon *Neely v. California State Personnel Bd., supra,* 237 Cal.App.2d at p. 489. We have seen that the isolation approach espoused in *Neely* has been disapproved by the California Supreme Court. Therefore, our opinion in *Washington v. State Personnel Bd.,* no longer states good law on this point.

We thus conclude the substantial evidence standard in SPB cases requires that all evidence be considered, including that which fairly detracts from the evidence supporting SPB's decision.

### C. *The Role of the Credibility Determinations of the ALJ*

In the original briefing in this appeal, CYA, citing federal cases involving decisions of the National Labor Relations Board (NLRB), argued

that a special form of substantial evidence review applies where the SPB rejects factual determinations of the ALJ that are based on the ALJ's determination of the credibility of witnesses. (E.g., *Universal Camera Corp. v. Labor Bd., supra,* 340 U.S. 474 (hereafter *Universal Camera*).[3]) CYA argued SPB should be reluctant to disturb the findings of the ALJ unless error is clearly shown and that a greater quantum of substantial evidence must be adduced where the SPB disturbs the credibility determinations of the ALJ.

This court independently discovered a potentially applicable statute (§ 11425.50) which was not cited by any of the parties. We requested and received supplemental letter briefs from CYA, Henderson, and SPB.

The statute is section 11425.50, which provides with respect to administrative adjudications:

"(a) The decision shall be in writing and shall include a statement of the factual and legal basis for the decision.

"(b) . . . If the factual basis for the decision includes a determination based substantially on the credibility of a witness, the statement shall identify any specific evidence of the observed demeanor, manner, or attitude of the witness that supports the determination, and on judicial review the court shall give great weight to the determination to the extent the determination identifies the observed demeanor, manner, or attitude of the witness that supports it."

The California Law Revision Commission commented that this provision "adopts the rule of Universal Camera Corp. v. [Labor Bd.], 340 U.S. 474 [,*supra*], requiring that the reviewing court weigh more heavily findings by

---

[3]*Universal Camera, supra,* 340 U.S. 474, held that the federal court of appeals, in reviewing an NLRB decision, erred in believing it was barred from taking into account the hearing examiner's report on factual questions insofar as that report was rejected by the NLRB. (*Id.* at pp. 491, 496 [71 S.Ct. at p. 466, 468-469].) *Universal Camera* held that in determining the substantiality of the evidence in the record, the findings of the trial examiner who observed the witnesses should be given reasonable weight, even though those findings were rejected by the administrative board. (*Id.* at pp. 488-489, 492-497 [71 S.Ct. at pp. 464-465, 466-469].) *Universal Camera* remanded for the court of appeals to reconsider the record, according the trial examiner's findings the relevance they reasonably commanded, but the court need not limit its reexamination to the effect of that report, but was free to grant or deny enforcement as it saw fit. (*Id.* at p. 497 [71 S.Ct. at p. 469].)

the trier of fact (the presiding officer[4] in an administrative adjudication) based on observation of witnesses than findings based on other evidence." (25 Cal. Law Revision Com. Rep. (1995) p. 160, reprinted in 32C West's Ann. Gov. Code (2002 supp.) foll. § 11425.50, p. 149.) Law Revision Commission comments are usually a reliable guide to legislative intent. (*In re Bryce C.* (1995) 12 Cal.4th 226, 241 [48 Cal.Rptr.2d 120, 906 P.2d 1275].)

We shall conclude section 11425.50 applies to SPB administrative adjudications of employment disciplinary actions (§ 19570 et seq.). We shall also conclude the reference to credibility findings in section 11425.50, subdivision (b) (§ 11425.50(b)) applies to the ALJ's proposed decision as well as SPB's decision. We shall further conclude, however, that section 11425.50 does not affect the outcome of this appeal, because the statute requires deference only to the extent the ALJ identifies observed demeanor, manner, or attitude of the witnesses, and in this case the ALJ made no such identification in connection with his determinations on witness credibility.

We note CYA's opening brief on appeal (which does not mention § 11425.50) appears to construe *Universal Camera, supra,* 340 U.S. 474, as requiring deference to *all* credibility determinations of the ALJ, regardless whether the ALJ identified his reasons. However, the California Legislature did not adopt such a broad standard. (§ 11425.50(b).) As reflected in the Law Revision Commission comments to section 11425.50: "Findings based substantially on credibility of a witness must be identified by the presiding officer in the decision made in the adjudicative proceeding. . . . However, the presiding officer's identification of such findings is not binding on the agency or the courts, which may make their own determinations whether a particular finding is based substantially on credibility of a witness. *Even though the presiding officer's determination is based substantially on credibility of a witness, the determination is entitled to great weight only to the extent the determination derives from the presiding officer's observation of the demeanor, manner, or attitude of the witness.* Nothing in subdivision (b) precludes the agency head or court from overturning a credibility determination of the presiding officer, after giving the observational elements of the credibility determination great weight, whether on the basis of nonobservational elements of credibility or otherwise. See Evid. Code § 780." (25 Cal. Law Revision Com. Rep., *supra,* at p. 161, italics added.)

█ We will not by judicial fiat adopt a broader rule where, as here, the California Legislature has struck a careful balance in a detailed statutory

---

[4] " 'Presiding officer' means the agency head, member of the agency head, administrative law judge, hearing officer, or other person who presides in an adjudicative proceeding." (§ 11405.80.)

scheme. (See *Osborn v. Hertz Corp.* (1988) 205 Cal.App.3d 703, 710-711 [252 Cal.Rptr. 613].)

### 1. *Statutory Framework of Section 11425.50*

 Section 11425.50 is part of the Administrative Adjudication Bill of Rights (§ 11425.10 et seq.), which was enacted in 1995 (Stats. 1995, ch. 938, § 21, p. 7127, operative July 1, 1997), as part of a major revision of California's Administrative Procedure Act (APA). (§§ 11340-11529.) (25 Cal. Law Revision Com. Rep., *supra*, pp. 5-542.)

The APA covers both (1) administrative regulations and rulemaking (§§ 11340-11357), and (2) administrative adjudications (§§ 11400-11529). However, this appeal concerns only administrative adjudication.

Before the 1995 legislation, the APA's administrative adjudication provisions (which were found in ch. 5 of div. 3 of tit. 2, §§ 11500-11529 (Chapter 5)) generally did not apply to SPB. Thus, former section 11501 provided (and still provides) that Chapter 5 applied to "any agency as determined by statutes relating to that agency" and a list of "enumerated agencies" which did not include SPB. (Former § 11501, Stats. 1994, ch. 26, § 231, p. 269.) Statutes relating to SPB (§ 18500 et seq.) did not (and do not now) make Chapter 5 *generally* applicable to SPB administrative adjudications, but did (and now do) make *specific* APA provisions applicable. Thus, section 19578 provided (and still provides) that hearings sought by employees subjected to adverse action are to be conducted in accordance with section 11513, which addresses admissibility of evidence at the hearing.

Thus, before 1995, the administrative adjudication provisions of the APA generally did not apply to SPB. (See also 25 Cal. Law Revision Com. Rep., *supra*, p. 79 [many agencies, including SPB, were wholly or largely uncovered by the adjudicative provisions of the pre-1995 APA]; Cal. Administrative Hearing Practice (Cont.Ed.Bar 2d ed. 1997) appen. A, p. 521 [APA provisions generally not applicable to SPB].)

A major legislative revision of the APA in 1995 kept Chapter 5 (§§ 11500-11530), but retitled it "Administrative Adjudication: Formal Hearing." (Stats. 1995, ch. 938, § 24.5, p. 7154, operative July 1, 1997.) As indicated, it appears Chapter 5 continues to be generally inapplicable to SPB.

However, the 1995 legislation also added a new Chapter 4.5 (§§ 11400-11475.50) to division 3 of title 2 of the APA (Chapter 4.5), which is entitled

Administrative Adjudication: General Provisions, and which contains the Administrative Adjudication Bill of Rights (§§ 11425.10-11425.60) in which we find the statute of interest to this appeal—section 11425.50. The bill of rights sets the minimum due process and public interest requirements for hearings subject to Chapter 4.5. (25 Cal. Law Revision Com. Rep., *supra*, at p. 154, commenting on § 11425.10 [governing procedure by which agency conducts adjudicative proceeding is subject to various requirements, including § 11425.50].)

### 2. *Section 11425.50 Applies to SPB*

We asked for supplemental briefing as to whether section 11425.50 applies to SPB. We shall conclude section 11425.50 does apply to SPB administrative adjudications of employment disciplinary actions (§ 19570 et seq.), as conceded by SPB.

The 1995 legislation became operative July 1, 1997 (Stats. 1995, ch. 938, § 21, p. 7127) and was therefore operative before the February 1998 commencement of the ALJ hearing in this case. (§ 11400.10 [Chapter 4.5 applies to adjudicative proceedings commenced after July 1, 1997].)

Pursuant to the 1995 legislation, Chapter 4.5 (§§ 11400-11475.50), of which section 11425.50 is a part, "applies to a decision by an agency if, under the federal or state Constitution or a federal or state statute, an evidentiary hearing for determination of facts is required for formulation and issuance of the decision." (§ 11410.10.) Clearly, SPB's decision concerning Henderson's dismissal fell within that description. (§§ 19578-19582 [statutory provisions for evidentiary hearing concerning disciplinary action of state employees].)

Section 11410.20 provides: "Except as otherwise expressly provided by statute: [¶] (a) This chapter applies to all agencies of the state. [¶] (b) This chapter does not apply to the Legislature, the courts or judicial branch, or the Governor or office of the Governor."[5]

Section 11415.10 says the "governing procedure by which an agency conducts an adjudicative proceeding is determined by the statutes and

---

[5]The Law Revision Commission comments stated, "Subdivision (b) is drawn from 1981 Model State APA § 1-102(1) [(reprinted in 15 West's U. Laws Ann. (2000) p. 1)]. Exemptions from this chapter are to be construed narrowly. [¶] Subdivision (b) exempts the entire judicial branch, and is not limited to the courts. Judicial branch agencies include the Judicial Council, the Commission on Judicial Appointments, the Commission on Judicial Performance, and the Judicial Criminal Justice Planning Committee." (25 Law Revision Com. com., *supra*, at p. 143, reprinted in 32C West's Ann. Gov. Code, *supra*, foll. § 11405.20, p. 136.)

regulations applicable to that proceeding," and Chapter 4.5 "supplements the governing procedure by which an agency conducts an adjudicative proceeding."

Section 11415.20 provides: "A state statute or a federal statute or regulation applicable to a particular agency or decision prevails over a conflicting or inconsistent provision of this chapter."

Thus, on its face, Chapter 4.5 of the APA applies generally to SPB.

When we examine the statutes governing SPB involvement in disciplinary action of state employees (§§ 19570-19588), we find no statutory exemption of SPB from the APA's Chapter 4.5, as is the case elsewhere. (See e.g. § 15609.5 [expressly exempting State Board of Equalization from APA Chapters 4.5 and 5]).[6] Nor do we find any statute particular to SPB which is conflicting or inconsistent with section 11425.50. Section 19582 requires of SPB decisions in administrative adjudications that "(e) The decision shall be in writing and contain findings of fact and the adverse action, if any. The findings may be stated in the language of the pleadings or by reference thereto. . . ." As SPB concedes in its supplemental brief, section 19582 does not conflict with, but instead can be harmoniously applied with section 11425.50.

SPB in its supplemental brief concedes it is subject to section 11425.50.

Despite SPB's concession, Henderson argues SPB is *not* subject to section 11425.50. However, Henderson cites inapposite statutory exemptions of SPB from APA provisions concerning *regulatory and rulemaking* powers (as opposed to adjudicatory powers). (§§ 18211, 18215.) This appeal involves administrative adjudication, not administrative rulemaking. Henderson cites section 18675, that SPB hearings shall be governed by rules of practice and procedure adopted by SPB. However, Henderson fails to identify any SPB rule or regulation that would conflict with section 11425.50. Therefore, Henderson's argument is without merit.

---

[6] We note the SPB statutes make selective reference to APA adjudicative provisions, e.g., section 19582.5 states SPB "may designate certain of its decisions as precedents. Decisions of the board are subject to Section 11425.60" (which defines when decisions may be designated as precedential decisions). Since Chapter 4.5 of the APA applies to state agencies in the absence of a statutory exemption, section 19582.5's specific reference to section 11425.60 would appear to be unnecessary.

Henderson also says California Constitution, article VII, section 3[7] mandates that SPB enforce the civil service statutes (a point we have already observed, *ante*). However, Henderson develops no constitutional argument and therefore presents nothing requiring discussion by this court. (*In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 672-673, fn. 3 [33 Cal.Rptr.2d 13] [disregarding appellate contentions unsupported by legal/factual analysis].)

We conclude section 11425.50 applies to SPB.

### 3. *Construction of "Decision" in Section 11425.50(b)*

That does not end our inquiry, however, because section 11425.50(b)[8] requires the court to give great weight to certain credibility findings in a "decision," and we requested supplemental briefing on whether "decision" in this statute referred to the SPB's decision or the ALJ's (proposed) decision.

SPB argues that since the only decision is rendered by SPB, not the ALJ (§ 19582 ["Hearings may be held by [SPB], or by any authorized representative, but [SPB] shall render the decision"]), section 11425.50(b) does not apply to the ALJ's proposed decision unless SPB adopts that decision.

CYA argues the context compels application to the ALJ's credibility findings, because the statute refers to "observed" demeanor of witnesses, and it was the ALJ rather than SPB who observed witness demeanor.

We shall conclude section 11425.50(b)'s reference to credibility findings in a decision refers to *both* the ALJ's proposed decision and SPB's decision.

We begin with the statutory definitions contained in the APA's Chapter 4.5. Thus, section 11405.50, subdivision (a), provides: " 'Decision' means an agency action of specific application that determines a legal right, duty, privilege, immunity, or other legal interest of a particular person." Section 11405.30 provides: " 'Agency' means a board, bureau, commission, department, division, office, officer, or other administrative unit, including the

---

[7]California Constitution, article VII, section 3, subdivision (a), provides SPB "shall enforce the civil service statutes and, by majority vote of all its members, shall prescribe probationary periods and classifications, adopt other rules authorized by statute, and review disciplinary actions."

[8]As indicated, section 11425.50(b) states "If the factual basis for the decision includes a determination based substantially on the credibility of a witness, the statement shall identify any specific evidence of the observed demeanor, manner, or attitude of the witness that supports the determination, and on judicial review the court shall give great weight to the determination to the extent the determination identifies the observed demeanor, manner, or attitude of the witness that supports it."

agency head, and one or more members of the agency head or agency employees or other persons directly or indirectly purporting to act on behalf of or under the authority of the agency head." The Law Revision Commission Comments to section 11405.30 state: "An administrative unit of an agency that has no authority to issue decisions or take other action on behalf of the agency is not an 'agency' within the meaning of this section." (25 Cal. Law Revision Com. Rep., *supra*, at p. 138, reprinted in 32C West's Ann. Gov. Code, *supra*, foll. § 11405.30, p. 133.)

Based on these definitions alone, it would appear that "decision" in section 11425.50 does *not* refer to the ALJ's proposed decision, because the ALJ in this type of case has no authority to issue decisions or take other action on behalf of the agency. Instead, as indicated, "Hearings may be held by [SPB], or by any authorized representative, but [SPB] shall render the decision . . . ." (§ 19582.) Thus, the SPB's decision does not constitute an administrative review of an ALJ's decision, but rather constitutes the only decision. Since the ALJ does not make a decision, but only a "proposed" decision, it would thus appear from the statutory definitions that section 11425.50's reference to "decision" refers only to SPB's decision, not the ALJ's "proposed" decision.

However, the statutory definitions govern construction of Chapter 4.5 "[u]nless the provision or context requires otherwise . . . ." (§ 11405.10.)

As we shall explain, the context of section 11425.50(b) requires that "decision" include the ALJ's proposed decision as well as SPB's decision.

Thus, section 11425.50 speaks of "observations" of witness demeanor, manner, or attitude. When SPB elects to have an ALJ hold the hearing and when SPB elects to decide the case upon the record without taking additional evidence (§ 19582), it is the ALJ rather than SPB who observes the witnesses.[9]

The Law Revision Commission comments to section 11425.50 state that subdivision (b), which adopts the rule of *Universal Camera, supra,* 340 U.S. 474, "generalizes the standard of review used by a number of California agencies."[10] (25 Cal. Law Revision Com. Rep., *supra,* at pp. 160-161, reprinted in 32C West's Ann. Gov. Code, *supra,* foll. § 11425.50, p. 149.)

---

[9]As indicated *ante,* section 19582 provides that if SPB decides not to adopt the ALJ's proposed decision, SPB itself "may decide the case upon the record, including the transcript, with or without taking any additional evidence . . . ."

[10]The Law Revision Commission comments state with respect to section 11425.50: "Subdivision (b) adopts the rule of Universal Camera Corp. v. [Labor Bd.] 340 U.S. 474 [, *supra*],

One of the cases expressly cited in the Law Revision Commission comments is *Apte v. Regents of University of California, supra,* 198 Cal.App.3d 1084, 1092 (*Apte*)—a case which, it almost goes without saying, we find apt.

*Apte, supra,* 198 Cal.App.3d 1084, involved administrative adjudication by an entity (University of California) which had quasi-judicial powers conferred by the California Constitution. (*Apte,* at p. 1090.) In *.Apte,* a university professor challenged a faculty vote terminating programs that had the incidental effect of eliminating his employment. Pursuant to university policies which had the status of statutes (*ibid.*), the matter was heard by a hearing committee which made factual findings and a recommendation (in favor of the professor) in a report to the chancellor, who made the actual decision. (*Id.* at p. 1092.) The chancellor rejected the committee's recommendation and upheld the faculty vote. (*Id.* at pp. 1088-1089.) *Apte* assumed the applicability of *Universal Camera, supra,* 340 U.S. 474. (*Apte, supra,* 198 Cal.App.3d at p. 1091.) Of particular interest to the instant appeal, *Apte* said: "In this case, we face an unprecedented question concerning the relevance of the hearing committee's finding of fact to our review of the chancellor's decision. The University notes that the substantial evidence test must be applied to the decision of the chancellor, not to that of the hearing committee, and implies that the hearing committee report is irrelevant because the chancellor did not follow it. Apte counters by citing administrative law decisions holding that an administrative board which delegates the task of hearing testimony to a referee must ordinarily accept the findings of the referee on issues of witness credibility. [Citations.] The findings of the hearing committee are undoubtedly relevant to this appeal. First, the chancellor in effect incorporated those findings by reference in his decision by stating that he agreed 'in general with the factual findings of the Hearing Panel.' The decision presumably adopts the findings of the committee unless it states otherwise. Second, under the current substantial evidence test the

requiring that the reviewing court weigh more heavily findings by the trier of fact (the presiding officer in an administrative adjudication) based on observations of witnesses than findings based on other evidence. This generalizes the standard of review used by a number of California agencies. See, e.g. Garza v. Workmen's Compensation Appeals Bd., 3 Cal. 3d 312, 318-319 [90 Cal. Rptr. 355, 475 P.2d 451] (1970) (Workers' Compensation Appeals Board); Millen v. Swoap, 58 Cal. App. 3d 943, 947-948, 130 Cal. Rptr. 387 (1976) (Department of Social Services); Apte v. Regents of University of Cal., 198 Cal. App. 3d 1084, 1092, 244 Cal. Rptr. 312 (1988) (University of California); Unemp. Ins. App. Bd., Precedent Decisions P-B-10, P-T-13, P-B-57; Lab. Code § 1148 (Agricultural Labor Relations Board). It reverses the existing practice under the [APA] and other California administrative procedures that gives no weight to the findings of the presiding officer at the hearing. See Asimow, *Toward a New California Administrative Procedure Act: Adjudication Fundamentals,* 39 UCLA L. Rev. 1067, 1114 (1992), *reprinted in* 25 Cal. L. Revision Comm'n Reports 321, 368 (1995)." (25 Cal. Law Revision Com. Rep., *supra,* at pp. 160-161.)

reviewing court is required to review the entire record, including the hearing committee's report. Since the committee alone was in a position to evaluate the credibility of witnesses, its conclusions may be considered in weighing the probative value of the evidence." (*Apte, supra,* 198 Cal.App.3d 1084, 1092.)

Thus, *Apte*, like the appeal now before us, involved (1) constitutionally conferred quasi-judicial powers, (2) an administrative procedure where the persons who heard the evidence did not make the decision but merely transmitted a proposed decision to the decision maker, and (3) rejection of the proposed decision by the decision maker.

We note *Apte* said the decision maker agreed " 'in general with the factual findings of the Hearing Panel.' " (*Apte, supra,* 198 Cal.App.3d 1084, 1092.) However, *Apte* also gave a second reason unrelated to any concurrence between the decision maker and the hearing officer, i.e., the reviewing court is required to review the entire record, including the hearing committee's report, and since the hearing panel alone was in a position to evaluate the credibility of witnesses, its conclusions may be considered in weighing the probative value of the evidence. (*Ibid.*)

Since section 11425.50 "generalizes the standard of review" of *Apte* and other cases (25 Cal. Law Revision Com. Rep., *supra,* at pp. 161-162, reprinted in 32C West's Ann. Gov. Code, *supra,* foll. § 11425.50, at p. 149), we conclude section 11425.50(b)'s reference to a decision's credibility findings encompasses the ALJ's credibility findings, even though the ALJ does not make the decision but merely proposes a decision to SPB, and even if SPB disagrees with the ALJ's findings.

We conclude section 11425.50(b)'s provision (that "on judicial review the court shall give great weight to the determination to the extent the determination identifies the observed demeanor, manner, or attitude of the witness that supports it") applies to both SPB decisions and determinations by the ALJ in SPB administrative adjudications concerning employment disciplinary actions (§ 19570 et seq.).

### 4. *Effect of Section 11425.50 on This Appeal*

■ Having concluded section 11425.50 applies to SPB, and the credibility determinations referred to in section 11425.50(b) apply to the ALJ's determinations (as well as SPB's determinations), we nevertheless conclude section 11425.50 does not apply in this appeal.

Thus, section 11425.50(b) (see fn. 8, *ante*) requires the court to give great weight to credibility determinations only "to the extent the determination

identifies the observed demeanor, manner, or attitude of the witness that supports it." As stated in the Law Revision Commission Comments: "Even though the presiding officer's determination is based substantially on credibility of a witness, the determination is entitled to great weight only to the extent the determination derives from the presiding officer's observation of the demeanor, manner, or attitude of the witness." (25 Cal. Law Revision Com. Rep., *supra*, p. 161.)

Here, the ALJ merely stated in his decision that he believed or disbelieved certain witnesses; he did not identify any "observed demeanor, manner, or attitude" of the witnesses. Thus, the ALJ merely said several times in his proposed decision that various witnesses "credibly testified" to factual matters. The ALJ also said Henderson's denial that supervisor Baugh asked him to prepare a report "is not credible in view of the credible testimony of Mr. Baugh. It is not plausible that on an issue that was so extremely important, Mr. Baugh would provide testimony that was inaccurate or dishonest." Thus, the ALJ based this credibility determination on inferences unrelated to witness demeanor, manner, or attitude.[11]

Since the ALJ never identified any "observed demeanor, manner, or attitude" of witnesses, section 11425.50 does not come into play in this appeal.

Without section 11425.50, CYA cannot rely on its broad construction of *Universal Camera,* because we will not by judicial fiat adopt a broader rule where, as here, the California Legislature has struck a careful balance in a detailed statutory scheme. (See *Osborn v. Hertz Corp., supra,* 205 Cal.App.3d at pp. 710-711.)

We therefore conclude we shall not give special weight to the ALJ's credibility findings in determining whether substantial evidence supports the SPB's decision.

II. *Substantial Evidence Supports the SPB Decision*\*

. . . . . . . . . . . . . . . . . . . . . . . .

---

[11]In this appeal, no one contends the ALJ's proposed decision was defective in failing to identify observations of witness demeanor, etc., to support credibility determinations, and we therefore express no view on the matter.

\*See footnote, *ante,* page 575.

## DISPOSITION

The judgment is affirmed. Henderson shall recover his costs on appeal.

Scotland, P. J., and Callahan, J., concurred.