Filed 4/1/15  McAlister v. State Personnel Bd. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MALCOLM McALISTER, <br><br> Petitioner and Appellant, <br><br> v. <br><br> STATE PERSONNEL BOARD, <br><br> Respondent. <br> ――――――――――――――――― <br> DEPARTMENT OF CORRECTIONS AND REHABILITATION, <br><br> Real Party in Interest. | F068970 <br><br> (Kern Super. Ct. No. S-1500-CV-278104-SMG) <br><br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Susan M. Gill, Judge.

Yarra, Kharazi, & Clason and H. Ty Kharazi for Petitioner and Appellant.

No appearance by Respondent.

Stephen A. Jennings and Clayton A. Mack, Staff Counsel, for Real Party in Interest.

-ooOoo-

## INTRODUCTION

Appellant Malcolm McAlister was dismissed as a correctional officer after prison authorities reviewed a video depicting him shoving an inmate's head into a door frame. McAlister challenges the superior court's refusal to disturb the State Personnel Board's decision sustaining the dismissal, and argues that there was insufficient evidence he intentionally injured the inmate. He also contends that reversal is warranted because seven pages of the administrative record are missing from the clerk's transcript on appeal. We reject McAlister's contentions and affirm the judgment.

## PROCEDURAL BACKGROUND

Effective January 24, 2012, appellant Malcolm McAlister was dismissed from his position as a correctional officer with the California Department of Corrections and Rehabilitation at Kern Valley State Prison. In the notice of adverse action regarding the dismissal (Gov. Code, § 19574), the warden of Kern Valley State Prison cited a January 19, 2011, incident where McAlister allegedly used unnecessary force on an inmate. The notice also claims McAlister failed to report the use of force and lied about the incident in a report.

McAlister appealed his dismissal to the State Personnel Board. (See Gov. Code, § 19575.) An administrative law judge (ALJ) heard the appeal on June 11, 2012. The ALJ made several findings of fact and sustained McAlister's dismissal. The State Personnel Board adopted the ALJ's findings and decision.

McAlister petitioned the Kern County Superior Court for a writ of mandamus compelling the State Personnel Board (the "Board") to reverse its decision. (See Code Civ. Proc., § 1094.5.) The Department of Corrections and Rehabilitation (the "Department") opposed the petition as the real party in interest. The superior court denied McAlister's petition, and he now appeals.

# ADMINISTRATIVE RECORD

## The Video Recording

At the hearing before the ALJ, a video recording of the incident was admitted into evidence.

The parties do not dispute that the video depicts several officers extracting an inmate referred to as "Joe" from his cell. Nor do they dispute that the video shows pepper spray is used on the inmate, and that he is transported to the showers to remove the pepper spray.

The crucial part of the video occurs as McAlister is escorting Joe out of the shower. As the two men approach the exit to the shower, Joe's head accelerates into a vertical metal door frame. At the time, McAlister's left hand was holding on to Joe's left arm, and McAlister's right hand was around the back of Joe's neck.

The Department contended the video is consistent with McAlister intentionally shoving Joe's head into the frame. McAlister maintained that he slipped on the shower floor, and the contact between Joe's head and the frame was unintentional.

## Lieutenant Blackstone's Testimony

Lieutenant Blackstone testified that he was the leader for the cell extraction. Blackstone did not see Joe's head hit the door frame when it occurred. However, Blackstone later reviewed the video of the incident pursuant to his duties as Incident Commander. He observed that "McAlister turned the inmate around to take him out of the shower, it looked like his hand went up to the back of his neck, and then as he was exiting the shower door, that he got forcibly pushed into the wall, into the framework." In Blackstone's opinion, this was an inappropriate, unnecessary use of force because Joe was not resisting. Blackstone saw no indication that McAlister slipped or that Joe's contact with the wall was accidental.

Lieutenant Blackstone testified that after a cell extraction is completed, every officer involved is required to submit a written incident report. The form should contain details of the incident including use of force used or observed by the officers.

Lieutenant Blackstone reviewed McAlister's incident report. In the report, McAlister claimed that he had slipped on the shower floor causing his arms to "snap forward inadvertently causing Joe to make contact with the shower wall." Blackstone testified that even if Joe's contact with the wall had been caused inadvertently, it should have been reported to the onsite RN.

Special Agent Anthony Graham's Testimony

Anthony Graham, a special agent with the Department of Corrections's Office of Internal Affairs, testified at the hearing. Graham reviewed the video and concluded that it was "very apparent" that McAlister "forcefully pushed the inmate's forehead."

Pursuant to his investigation of the incident, Special Agent Graham interviewed McAlister. Before the interview, Graham allowed McAlister to view the video. McAlister told Graham that he slipped and accidentally caused Joe's head to hit the door frame. McAlister "kept saying that he did not go to the base of the neck." Graham was troubled by McAlister's account because the video shows McAlister's "right hand is in the middle of his back and as he's coming out, you can clearly see he is not slipping."

McAlister's Testimony

McAlister testified that he did not intend to cause Joe to come into contact with the wall.

McAlister said that as he was walking Joe out of the shower, he felt the "watery shower floor" on the soles of his boots. He moved his right hand up to Joe's neck area so he "could be stable and have … secure control of him." As McAlister took another step, he

4.

slipped causing his arms to "snap forward" causing Joe's body[1] to make contact with the shower wall.

McAlister testified that Joe was not resisting at the time of the incident. McAlister also said he never told the nurse that Joe hit the wall. McAlister admitted to suffering a prior adverse employment action for improper use of force on an inmate. McAlister testified: "I think the charges was [*sic*] being less than honest and using either unnecessary or excessive force, and I was off for five months."

The ALJ's Proposed Decision

In a proposed decision, the ALJ found that McAlister had "moved his right hand from Inmate Joe's back to his neck and then shoved Inmate Joe's head into the door frame." The ALJ also found that the video showed no sign that McAlister had slipped or lost his balance in any way. The ALJ also determined McAlister's testimony was not credible.

The ALJ recommended sustaining the penalty of dismissal. The Board adopted the ALJ's findings and proposed decision.

## DISCUSSION

I.      The Video Provides Substantial Evidence that McAlister Intentionally Shoved Joe's Head into the Door Frame

McAlister argues the Board's findings are not supported by substantial evidence, and the superior court therefore erred in denying the petition for a writ of mandate.[2] We disagree.

---

[1] McAlister indicated that it "could have been" Joe's head that hit the wall.

[2] The second issue raised in McAlister's opening brief is, in effect, indistinguishable from this substantial evidence argument. He argues that "the lack of evidence showing 'intention' by McAlister in the push incident should have been held against the [State Personnel Board], not McAlister." Of course, the premise of this contention is that there was indeed a lack of evidence showing intent. We conclude, however, that the video itself is substantial evidence of intent.

5.

Findings adopted by the Board must be upheld if they are supported by substantial evidence.  (*Furtado v. State Personnel Bd.* (2013) 212 Cal.App.4th 729, 742.)  The evidence is sufficient if it is reasonable, credible and of solid value, such that a reasonable mind might accept it as adequate to support a conclusion.  (*California Youth Authority v. State Personnel Bd.* (2002) 104 Cal.App.4th 575, 584–585.)  In determining whether such evidence exists in the administrative record, we do not reweigh evidence or substitute our own judgment if the Board's decision is reasonable.  (*Id*. at p. 584.)  We " 'indulge all presumptions and resolve all conflicts in favor of the board's decision….'  [Citation.]" (*Ibid*.)

The superior court, ALJ and State Personnel Board all concluded that the video shows McAlister intentionally pushing Joe's head in to the door frame.  We have reviewed the video and determine that substantial evidence supports their conclusions.  The video depicts McAlister using his right hand to shove Joe's head into the door frame.  Nothing in the movement of McAlister or Joe suggests the incident was accidental.  Since circumstantial evidence may be used to prove intent (*Gubser v. Department of Employment* (1969) 271 Cal.App.2d 240, 243; 1 Witkin, Cal. Evidence (5th ed. 2012) Circumstantial Evidence, § 122, p. 528), we conclude the video constitutes substantial evidence that McAlister intentionally pushed Joe's head into the frame.

II.     The Fact that Seven Pages of the Administrative Record are Missing from the Appellate Record Does Not Warrant Reversal

McAlister argues we must reverse the trial court's judgment because the superior court failed to review seven pages of the administrative record.  We disagree.

Seven pages of the administrative record are indeed missing from the clerk's transcript on appeal.[3]  The seven pages apparently contain transcript of the hearing before the ALJ.[4]  But these missing pages do not warrant reversal.

_____

[3] The Department claims that the version of the administrative record it received contained the seven pages.  However, the Department offers no citation to the appellate

6.

"In a [Code of Civil Procedure] section 1094.5 proceeding, it is the responsibility of the petitioner to produce a sufficient record of the administrative proceedings; '… otherwise the presumption of regularity will prevail .…' [Citations.]" (*Elizabeth D. v. Zolin* (1993) 21 Cal.App.4th 347, 354.) " '[I]n the absence of an evidentiary record, sufficiency of the evidence is not an issue open to question. Rather, we must presume that the findings were supported by substantial evidence.' [Citation.]" (*Ibid.*)

Here, any presumption raised by the missing seven pages supports affirmance of the judgment.

## DISPOSITION

The judgment is affirmed. The State Personnel Board and Department of Corrections and Rehabilitation shall recover costs.

_____
Poochigian, J.

WE CONCUR:


_____
Cornell, Acting P.J.


_____
Kane, J.

---

record to support this assertion (Cal. Rules of Court, rule 8.204(a)(1)(C), nor has it adduced evidence on appeal to that effect (Code Civ. Proc., § 909).

**4** The pages before and after the gap in the clerk's transcript are themselves transcripts of the ALJ hearing.