[No. D049051. Fourth Dist., Div. One. July 3, 2007.]

LUIS A. VALENZUELA, Plaintiff and Respondent, v.
STATE PERSONNEL BOARD, Defendant and Respondent;
DEPARTMENT OF CORRECTIONS AND REHABILITATION, Real Party
in Interest and Appellant.

COUNSEL

Debra L. Ashbrook and Stephen A. Jennings for Real Party in Interest and Appellant.

Benjamin C. Sybesma, Christine Albertine and Sonia Garcia for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

OPINION

**HUFFMAN, J.**—Real party in interest and appellant, the Department of Corrections and Rehabilitation (hereinafter Department), dismissed its employee, petitioner and respondent Luis A. Valenzuela, from his position as a corrections officer for failing a drug test. Valenzuela appealed to the State Personnel Board (the Board), on the basis that the positive drug test had been caused by his ingestion of Mexican diet medication that he had legally obtained in Mexico, and he was unaware that taking the medication could result in a positive test for amphetamines. The Board upheld the penalty.

Valenzuela filed a petition for writ of administrative mandate, requesting the superior court to vacate the Board's order, asserting the dismissal decision

was not supported by substantial evidence. (Code Civ. Proc., § 1094.5.) The trial court granted the petition because it found the Board had abused its discretion in upholding the termination, because there was no substantial evidence to support a conclusion that Valenzuela was on legally adequate notice, for due process purposes, that his foreign prescription could result in his being tested positive for amphetamines. The court also found no substantial evidence that would have prevented assertion of a defense that the medication might have some legitimate medical use. (49 C.F.R. § 40.137 (2007) [pertaining to duties of an appointed medical review officer to verify drug test results].) Valenzuela was ordered reinstated with backpay.

The Department contends we should reverse the trial court's decision because (1) the Board did not abuse its discretion by upholding the termination, in light of evidence that in the year 2000 and following, the Department had distributed some information and a memo warning employees about potential positive drug tests from unspecified foreign diet pills, and Valenzuela had heard of the memo; and (2) the Board correctly found that Valenzuela could not properly avail himself of the defense that this medication had some legitimate medical uses.

The Department's contentions of error are not supported by the record. We agree with the trial court that the Board abused its discretion in upholding the termination, under those circumstances, due to a lack of sufficient evidence supporting a finding of adequacy of the form and content of the notice given about the prohibited conduct. We affirm the judgment granting the relief requested in the petition.

FACTUAL AND PROCEDURAL SUMMARY

A. Employment, Termination, and Administrative
Proceedings

Valenzuela worked for the Department as a corrections officer for about three years, beginning in 2001. The Department had a random drug and alcohol testing program.

In November 2003, Valenzuela took his wife to a Mexican doctor's office for weight loss advice. While he was there, he inquired about weight loss for himself, due to his own health concerns (cholesterol and fitness for duty). He told the doctor that he was subject to drug testing at work and did not want any trouble. The doctor prescribed diet pills, Esbelcaps and Neobes, saying they would not be a problem. Esbelcaps contain a mixture of diazepam (Valium) and fenproporex, which is a stimulant that may be metabolized by

the body into a different substance, amphetamine. Amphetamine is a byproduct of the medication. Valenzuela filled the prescription legally and started to take it.

Two days later, Valenzuela was randomly selected to participate in drug testing through his employer. When the drug test came back positive, Valenzuela was notified of that fact by the Department's contracted medical review officer, Dr. Lewis. Dr. Lewis reviews drug tests pursuant to Department and federal transportation regulations. Valenzuela told Dr. Lewis that he had been taking Mexican diet pills and sent Dr. Lewis a copy of a letter from his Mexican doctor, stating that the medication was a legitimate weight loss treatment.

After a *Skelly* hearing, the warden of the prison where Valenzuela worked decided that dismissal was the proper penalty. (*Skelly v. State Personnel Board* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774].) Valenzuela appealed to the Board, which sent the matter to an administrative law judge (ALJ), who took testimony and received exhibits. The record included an undated memo entitled "Dangers of Non-U.S. Medications," stating that "Drivers should not bring back and/or take any medication from a foreign country without a prescription from a U.S. physician. [¶] Mexican diet pills may contain powerful stimulants which are or may be metabolized into amphetamines [listing several by name, including Esbel]." Also in the record is a memo sent out by Dr. Lewis, dated May 9, 2000, to "Drug and Alcohol Program Coordinators," explaining his January 6, 2000 memo regarding Mexican diet pills, by repeating the information that they may contain powerful stimulants which are or may be metabolized into amphetamines. The copies of these memos in the record do not have any letterhead or other information indicating their distribution or source.

At the hearing, Valenzuela testified about the circumstances of receiving the medication he had been prescribed, as summarized above. He was asked by his attorney whether he had heard about any Department memoranda warning employees about foreign medications. He stated that he heard about such a memo, but never saw it, and did not know the names of any banned medications. He stipulated that a positive drug test had been taken, but argued that he had asked the Mexican doctor if the medications would be a problem at his employment and was assured that they would not. Valenzuela presented expert testimony from a toxicologist, stating that amphetamines were only rarely prescribed in the United States for dietary purposes (morbid obesity). This medication was not an amphetamine, but amphetamines were metabolic byproducts of it.

The Department opposed the appeal, taking the position that employees were told in the 2000–2001 timeframe not to obtain Mexican medicines that

could possibly be metabolized as amphetamines, due to drug testing concerns. In support, the Department supplied the two memos from the year 2000 and Dr. Lewis's testimony that he advised employees in 2000–2001 not to take Mexican medicine. Accordingly, the Department argued that the dismissal should be upheld in light of Valenzuela's admission that he heard something about a memo warning of unspecified foreign diet pills. Further, the Department argued that Valenzuela should not be allowed to raise the defense otherwise provided in 49 Code of Federal Regulations part 40.137 (2007), i.e., that the Mexican prescription may have some legitimate medical uses.

At the close of the evidence, the ALJ ruled that there was no excuse for Valenzuela's ingestion of Mexican diet pills, "because prescription of amphetamines for routine weight loss programs is prohibited in the United States and [Valenzuela] was on notice as to the danger of taking such prescriptions. To hold otherwise would undermine the State's strong policy of prohibiting the use of illegal substances by law enforcement personnel." Accordingly, the grounds for dismissal were sustained (inexcusable neglect of duty, willful disobedience, and other failure of good behavior causing discredit to the employer). (Gov. Code, § 19572, subds. (d), (*o*), (t).) The ALJ concluded: "Illegal use of controlled substances by a law enforcement officer warrants dismissal in the first instance. [Citation.]"

After returning the matter to the ALJ for clarification of the extent of Valenzuela's notice about the memos (i.e., he had not seen them and did not know their exact content, but had heard something of the kind existed), a new decision was issued and the Board adopted the ALJ's recommendations to dismiss Valenzuela.

## B. Superior Court Proceedings

Valenzuela brought this petition for writ of administrative mandate, contending that no substantial evidence existed to determine that the penalty of dismissal was appropriate. After receiving points and authorities and considering oral argument, the trial court granted the petition, ruling that the Board had abused its discretion in upholding the dismissal. The court found the Department had not presented substantial evidence that Valenzuela was on legally adequate notice, to comport with due process requirements, that this foreign prescription could result in his being tested positive for amphetamines. The court summarized: "There is no evidence that Petitioner, at work or in training, was ever given such a warning or ever read such a warning. The decision of the [Board] only establishes, by Petitioner's admission, that he heard something about an unspecified memo warning of unspecified foreign diet pills. [¶] Additionally, Respondent did not establish with substantial evidence that Petitioner could not avail himself with the defense provided

in 49 Code of Federal Regulation, Section 137, in so far as it was never established on the record that Petitioner's Mexicali prescription had no legitimate medical use."

The trial court further analyzed the evidence and determined that this specific defense issue had not been fully litigated or resolved, i.e., whether the prescribed medication lacked any legitimate medical use either in Mexico or the United States. (It should be noted that the order mistakenly refers to "methamphetamine," but in context, the trial court was discussing only amphetamine.) Therefore, the court found the Department did not meet its burden to establish this particular cause for discipline.

Accordingly, Valenzuela's petition for writ of mandamus was granted and orders were issued for reinstatement with backpay. The Department appeals. The Board, as the neutral agency that adjudicated the dispute, has not filed a brief in this matter, instead deferring to the Department to litigate the merits of this dispute.

## DISCUSSION

### I

*STANDARDS OF REVIEW; CONTENTIONS*

Valenzuela brought this petition under Code of Civil Procedure section 1094.5, to inquire into the validity of the Board's administrative decision. The trial court was required to determine "whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).) The trial court was required to utilize the substantial evidence test in reviewing the agency's decision. (*County of Los Angeles v. Civil Service Com.* (1995) 39 Cal.App.4th 620, 633 [46 Cal.Rptr.2d 256].) On appeal from the decision of the trial court, this court also reviews the administrative decision, not the superior court's decision, by the same standard, i.e., the substantial evidence test. (*Ibid.*)

Under Code of Civil Procedure section 1094.5, subdivision (c), "abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." In evaluating the legal sufficiency of the evidence, the following basic approach is required: "First, one must resolve all explicit conflicts in the evidence in favor of the respondent and presume in favor of the judgment all *reasonable* inferences. [Citation.] Second, one must determine whether the evidence thus

marshaled is substantial. While it is commonly stated that our 'power' begins and ends with a determination that there is substantial evidence [citation], this does not mean we must blindly seize any evidence in support of the respondent in order to affirm the judgment. The Court of Appeal 'was not created . . . merely to echo the determinations of the trial court. A decision supported by a mere scintilla of evidence need not be affirmed on review.' [Citation.] '[I]f the word "substantial" [is to mean] anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with "any" evidence. It must be reasonable . . . , credible, and of solid value . . . .' [Citation.] . . ." (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1632–1633 [29 Cal.Rptr.2d 191] (*Kuhn*), fns. omitted.)

This substantial evidence review must further be conducted in light of the principles we relied on in *Kolender v. San Diego County Civil Service Com. (Gant)* (2007) 149 Cal.App.4th 464 [57 Cal.Rptr.3d 84], in which we outlined the applicable policies as follows: " ' "The appellate court must determine whether the administrative agency exercised its discretion to an end or purpose not justified by all the facts and circumstances being considered." [Citations.]' " (*Id.* at p. 471.) "Moreover, 'The agency's discretion is not unfettered, and reversal is warranted when the administrative agency abuses its discretion, or exceeds the bounds of reason.' [Citation.]" (*Ibid.*)

The parties view the record differently. As appellant, the Department argues the dismissal should be upheld solely because Valenzuela made an admission to the Board that he had heard something about a memo warning of unspecified foreign diet pills, but he nevertheless took this medication. The Department believes that no more than this degree of constructive notice needed to be shown in order to satisfy due process concerns. Moreover, the Department would resolve the conflicting evidence presented about any possibly proper purpose for the use of amphetamines, to support the Board's decision.

In response, Valenzuela contends that when the record is reviewed as a whole, this court should take the same view of the evidence as did the trial court, and find an abuse of discretion by the Board. He contends the notice given to him was defective in both form and content, and in any case, the Board could not reasonably conclude on this record that grounds for discipline were proven. The Department had the burden to demonstrate "the employee engaged in the conduct on which the disciplinary charge is based and that such conduct constitutes a cause of discipline under the applicable statutes. [Citations.]" (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1153 [43 Cal.Rptr.2d 693, 899 P.2d 79].) "The employee may avoid the adverse action by establishing that the

conduct was justified." (*Ibid.*) Although Valenzuela does not argue the conduct was "justified," he apparently argues it should be excused due to his lack of any knowing violations of the employer's promulgated standards of conduct.

## II

### ANALYSIS

The essential facts are undisputed: the prescription was legally obtained from a Mexican medical doctor, under circumstances in which Valenzuela made some efforts to avoid taking any illegal drug, but his drug test was positive. We accordingly assess the record for support for the Board's decision, to determine whether any prejudicial abuse of discretion occurred, through the issuance of an order or decision that is not supported by the findings. (Code Civ. Proc., § 1094.5, subd. (c).)

To assess the evidentiary support for the administrative decision, we first take note that the ALJ's ruling that there was no excuse for Valenzuela's ingestion of Mexican diet pills made a false assumption, that the actual prescription issued was for amphetamines for a routine weight loss program, which is prohibited in the United States. The ruling stated, "prescription of amphetamines for routine weight loss programs is prohibited in the United States and Valenzuela was on notice as to the danger of taking *such prescriptions*." (Italics added.) However, the Department's expert testified, and Valenzuela's expert concurred, that the prescribed medication, Esbelcaps, was not itself an amphetamine, but rather this substance is metabolized by the body into an amphetamine as a byproduct.

Further, the ALJ's finding that Valenzuela was on adequate notice as to the danger of taking such prescriptions is problematic for another reason, because both the content and the format of the notice were proven only to a speculative degree. Although Dr. Lewis testified that he told employees on a general basis that they should not take Mexican diet medication, and said he distributed these memos to coordinators, this does not demonstrate an established Department policy of notifying its employees of the exact nature of the prohibited conduct. For example, these memos listed three particular Mexican medications that had caused drug testing problems, including Esbel, but it was not made clear whether Esbelcaps are the same thing.

Further, the copies of the 2000 memos in the file do not contain any indication on their faces to show how they were distributed or under what authority. There is no evidence on whether these memos were placed in employee handbooks or other official materials distributed to employees, at a

time when Valenzuela was an employee. Dr. Lewis testified that he distributed such memos three times before March 2001, when Valenzuela joined the Department, but the record is not clear whether the Department made such efforts while Valenzuela was employed, or to what extent.

We accordingly disagree with the Department that the admission by Valenzuela that he had heard of some such policy is sufficient to satisfy any due process concerns in the employee discipline context. " '[I]f the word "substantial" [is to mean] anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with "any" evidence. It must be reasonable . . . , credible, and of solid value . . . .' [Citation.]" (*Kuhn, supra*, 22 Cal.App.4th 1627, 1633.) The Department did not prove with substantial evidence that its employees in general or Valenzuela in particular were placed upon sufficient constructive or actual notice of the precise nature of the conduct that would constitute a violation of the employer's published standards.

Moreover, the trial court correctly noted that only conflicting evidence had been presented about the basis for any potential defense under the federal regulatory provision, 49 Code of Federal Regulations part 40.137 (2007). This regulation sets out the duties of an appointed medical review officer, such as Dr. Lewis, to interpret drug test results by inquiring about any possible legitimate explanations for the presence of a banned substance in a test. For example, under subdivision (e)(2) of this part, a medical officer may consider an employee's use of medication from a foreign country, under the following guidelines: "(1) There can be a legitimate medical explanation only with respect to a substance that is obtained legally in a foreign country. [¶] (2) There can be a legitimate medical explanation only with respect to a substance that has a legitimate medical use. . . . [¶] (3) Use of the substance can form the basis of a legitimate medical explanation only if it is used consistently with its proper and intended medical purpose." (49 C.F.R. § 40.137(e)(1), (2), (3) (2007).)

This defense issue, on which conflicting expert testimony was presented, was never resolved on the record, i.e., whether fenproporex was currently prescribed in the United States or had any legitimate medical use either in Mexico or the United States. It would be inappropriate for this court to determine, on a de novo basis, the validity of any such defense, as support for the Board's decision.

■ Instead, as the trial court appropriately commented in its statement of decision: "There is no evidence that Petitioner, at work or in training, was ever given such a warning or ever read such a warning. The decision of the [Board] only establishes, by Petitioner's admission, that he heard something

about an unspecified memo warning of unspecified foreign diet pills." Without more than the proof in the record about various assumptions about the amount and nature of the notice given, regarding the type and extent of prohibited conduct, this dismissal decision cannot be upheld on the grounds stated.

## DISPOSITION

The judgment is affirmed. Costs are awarded to respondent Valenzuela.

Benke, Acting P. J., and McIntyre, J., concurred.