Filed 7/16/13  Bautista v. State Personnel Board CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JAVIER BAUTISTA,<br><br>        Plaintiff and Appellant,<br><br>              v.<br><br>STATE PERSONNEL BOARD,<br><br>        Defendant and Respondent;<br><br>DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>        Real Party in Interest and Respondent. | F065049<br><br>(Super. Ct. No. 11C0119)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kings County.  James LaPorte, Judge.

Thomas Perez for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Alfred Mondorf and Stephen A. Jennings for Real Party in Interest and Respondent.

-ooOoo-

**INTRODUCTION**

Javier Bautista appeals a judgment denying his petition for writ of administrative mandate that challenged the decision of the State Personnel Board (SPB) upholding the

California Department of Corrections and Rehabilitation's (CDCR) determination to terminate his employment. He challenges the administrative law judge's finding that his testimony was not credible. He further contends the evidence was insufficient to support the finding that he was dishonest for failing to report the use of force. We reject these contentions and affirm the judgment.

## PROCEDURAL BACKGROUND

Javier Bautista and Abel Garcia were dismissed from their employment with the CDCR following an incident in December 2007. Each appealed the dismissal to the SPB. The matters proceeded jointly and the administrative law judge (ALJ) heard seven days of testimony taken in December 2009 and March 2010.

On October 7, 2010, the ALJ issued his proposed decision. The decision sustained the dismissals and found that the conduct of Bautista and Garcia constituted inexcusable neglect of duty, willful disobedience, and failure of good behavior.

On October 19, 2010, the SPB sustained the dismissals and adopted the ALJ's findings of fact, determination of issues, and proposed decision.

Thereafter, Bautista filed a petition for writ of administrative mandamus with the Kings Superior Court. On February 22, 2012, the trial court issued an order denying the petition. More particularly, the trial court found that Bautista's version of events was not supported by the evidence. It concluded that the SPB acted within its jurisdiction, Bautista received a fair trial, the findings and evidence supported the decision, and the penalty imposed was not an abuse of discretion.

## FACTUAL BACKGROUND

On December 8, 2007, Bautista, a correctional officer, and others were assigned to work various positions in O-Wing at the Correctional Training Facility in Soledad. During the course of the third watch shift, Officer Eugenio Vancine was "gassed" by an inmate, Juan Martinez, with a substance later determined to be tooth powder. Vancine asked his partner that evening, Officer Bryan Neville, to notify Sergeant Abel Garcia.

2.

Garcia responded to the tier and requested the assistance of Bautista and Officer Chance Andes. Garcia determined the inmate should be removed from his cell. Because the area in front of the inmate's cell—number 121—was so small, two individuals could not stand shoulder-to-shoulder in the platform area. Vancine stood sideways to Garcia's right.

Vancine, Andes and Officer Jaime Moreno testified that Garcia, Bautista, and Vancine stood on the platform in front of cell 121. Garcia claimed he was accompanied by Bautista and Andes. Bautista did not remember who accompanied him and Garcia. Next, an officer was directed to key the cell door to remove the inmate. Vancine and Andes testified that Vancine keyed the door. Garcia testified he directed Andes to do so because he had already ordered Vancine to report to the infirmary.[1] Bautista testified he did not see who keyed the cell door because he was focused solely on the inmate.

Once the cell door was opened so that the inmate could be handcuffed, Garcia and Bautista alleged the inmate resisted by tensing his hands and looking back over his shoulder as if preparing to spit at, kick, or head-butt Garcia. On the other hand, Vancine and Andes indicated the inmate did not resist and, in fact, complied with directives to back up to the cell door and to "cuff up." Garcia and Bautista testified they applied appropriate force to overcome the inmate's resistance. Vancine testified the force was unnecessary and excessive because the inmate was compliant.

Once the inmate was handcuffed, Garcia and Bautista escorted the inmate out of the cell and onto the tier. They were followed by Vancine, Andes, and Moreno. According to Bautista, no force was required to gain the inmate's compliance during the tier escort. Andes did not observe any contact between either Garcia or Bautista and the inmate, but testified he heard a slap during the escort. As he looked in the direction of the sound, he heard an inmate in cell 113 state, "[H]oly shit, he slapped him." Inmate

---

[1]Vancine testified Garcia neither ordered him off the tier nor to report to the infirmary. His testimony was corroborated by Andes. Additionally, Bautista testified that he did not hear anyone direct Vancine to leave the tier.

Daniel Schafer testified the "mood was real aggravated" as the escort group moved down the tier. He then observed Garcia strike the inmate twice, and Schafer exclaimed, "[H]oly S, he just hit him." Moreno did not see the inmate resist, nor did he see Garcia slap the inmate during the escort.

Intending to place the inmate in a holding cell, Garcia and Bautista reached the officers' station area. Vancine, Andes, and Moreno followed. Bautista testified the inmate continued to move his head in an aggressive manner while at the entrance to the holding cell. Once the holding cell door was opened and the inmate began to enter, Bautista released his grip and let Garcia take over. Bautista then began removing his latex gloves and turned away. Bautista did not recall observing any force used at the holding cell; he did not see Garcia hold the inmate against the wall of the holding cell. Andes testified that Garcia pushed the inmate's face into the closed holding cell door. Once the door to the holding cell was opened, Garcia pushed the inmate inside. Moreno testified that when he arrived at the officers' station, Garcia and Bautista were holding the inmate against the holding cell door. Moreno heard Garcia tell the inmate something like "[W]ho do you think you are gassing my officers?" The inmate was not resisting. Vancine testified when he arrived at the officers' station, the inmate's face was pressed to the back of the holding cell by Garcia. Garcia then made a reference to Corcoran and struck the inmate in the head, neck, and upper torso with his fists. Garcia testified he did not consider slamming the inmate against the wall of the holding cell to be a use of force. Andes considered Garcia's act of shoving the inmate into the holding cell to be unnecessary.[2]

Meanwhile, Lieutenant Angela Kester responded to the tier after being advised that an inmate was being removed from his cell. Upon arrival, she observed Garcia and

---

[2]Officer Alejandro Coronado, whose name does not appear in the O-Wing logbook as having been granted access to the area at the time of the incident, testified that he saw Garcia attempting to maintain control of the inmate. He did not see Garcia push the inmate; rather Garcia's arm was on the small of the inmate's back and he was holding the back of the inmate's head. Coronado observed no inappropriate use of force.

Bautista escorting an inmate up the tier. She returned to her office and waited for Garcia to brief her. When he did not, Kester returned to the tier. Arriving at the officers' station, Kester noted the inmate had already been placed in the holding cell. Garcia advised Kester that the inmate had turned on him when they were attempting to cuff the inmate back at the cell. As a result, Garcia's hand was injured. It was shaking, red, and swollen. Kester directed both Garcia and Vancine to report to the infirmary.

Garcia and Vancine were evaluated at the infirmary. Before the two returned, a medical assistant telephoned Kester to advise her that Garcia's hand injury needed to be evaluated at an outside hospital, and that Garcia had indicated his injury occurred while taking an inmate to the ground. Because there was a possibility of injury to the inmate, Kester ordered he, too, be medically evaluated.[3]

When Garcia and Vancine returned to O-Wing, Kester spoke briefly with Garcia. Garcia testified Kester told him not to worry about writing his report as it could be taken care of later. Garcia was then transported to an outside hospital for treatment. The others involved were to write their reports by the end of their shift. Vancine and Andes alleged they were encouraged by Bautista to inaccurately report that Andes had keyed the door to cell 121.[4] Bautista denied doing so and testified Andes told him that he had keyed the door. Andes was also approached by Garcia to report that he, rather than Vancine, had keyed the door to cell 121. Both Andes and Vancine testified that their original incident reports were inaccurate or incomplete.

When Garcia returned from the hospital, he advised Kester he could not complete his incident report as a result of his hand injury. The doctor excused Garcia from work temporarily. Kester indicated she would type Garcia's report; it was prepared and

---

[3]Kester directed Bautista to take photographs of Vancine (who was still covered in tooth powder) as well as the inmate and involved areas.

[4]Typically, the staff member who has been assaulted or gassed is immediately directed to report to the infirmary for evaluation and does not further interact with the involved inmate.

5.

approved of by Garcia, but he never signed it.  Garcia claimed he refused to sign it because it was not accurate.

Kester also assisted Bautista by preparing his report.  His original incident report failed to document that he and Garcia had given the inmate verbal orders to back up and cuff up while at cell 121.  Bautista reviewed and signed the report typed by Kester; he never indicated it was inaccurate in any way.  Bautista admitted signing the typed report, but testified he was not comfortable with it.  He felt if he did not sign the typed version, his failure to do so would amount to insubordination.

A few days after the incident, both Vancine and Andes submitted amended incident reports.  Those supplemental reports were accurate and complete accountings of the incident.

## BAUTISTA HAS FAILED TO COMPLY WITH THE COURT'S PREVIOUS ORDER DATED OCTOBER 18, 2012

Bautista initially filed his opening brief on October 16, 2012.  On October 18, 2012, the court found the brief failed to comply with California Rules of Court, rule 8.204.  Specifically, the brief failed to provide adequate citations to the record, and more particularly, omitted conflicting evidence presented by respondent below.  Bautista was expressly advised that "a party who challenges the sufficiency of the evidence to support a finding must summarize the evidence on that point, *favorable and unfavorable*, and show how and why the court erred."  (Italics added.)  Bautista has failed to remedy this deficiency.

In the amended opening brief filed November 13, 2012, Bautista's statement of facts presents *only* those facts favorable to his position, to wit:  the testimony offered by Bautista and Abel Garcia.  Bautista fails to even acknowledge the contrary testimony offered by a number of other witnesses.  Where an appellant presents only facts and inferences favorable to his position, the court may deem his substantial evidence challenges waived.  (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218.)  Because Bautista has failed to fulfill his obligations concerning

the discussion and analysis of substantial evidence, we deem the issue waived. In any event, a review of the evidence leads to the conclusion that substantial evidence supports the factual findings.

## DISCUSSION

### I.	Standard of Review

Pursuant to the procedures for imposing discipline on a state employee, CDCR has the initial responsibility to determine whether there is cause for discipline and, if so, what discipline to impose. (Gov. Code, § 19574.) The employer must give the employee notice of and reasons for the proposed action and give the employee an opportunity to respond. (*Ibid.*; *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 215.)

The employee has the right to a review of the disciplinary action by the SPB. (Gov. Code, § 19588; Code Civ. Proc., § 1094.5; *Boren v. State Personnel Board* (1951) 37 Cal.2d 634.) The SPB is a state administrative agency with adjudicatory powers under the state Constitution. (Cal. Const., art. VII, §§ 2, 3; *Department of Parks & Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813, 823 (*Parks*).) On review of a disciplinary action, the SPB acts like a trial court in ordinary judicial proceedings (e.g., making factual findings and exercising its discretion). (*Parks*, *supra*, at p. 823.) The SPB may appoint an ALJ to conduct an evidentiary hearing and issue a proposed decision, which the SPB may adopt or reject in whole or in part. (Gov. Code, § 19582; *California Youth Authority v. State Personnel Bd*. (2002) 104 Cal.App.4th 575, 583.) The SPB may overturn the employer's imposition of discipline for one of three reasons: (1) the evidence does not establish the fact of the alleged cause for discipline; (2) the employee was justified; or (3) cause for discipline is shown but is insufficient to support the level of punitive action imposed. (*Parks*, *supra*, at p. 827.)

Thereafter, an employee may challenge the SPB's decision by filing a petition for writ of administrative mandate in the superior court. (Code Civ. Proc., § 1094.5; *State Personnel Bd. v. Department of Personnel Admin*. (2005) 37 Cal.4th 512, 522.) "Because the [SPB] derives its adjudicatory authority from the state Constitution rather

than from a legislative enactment, a superior court considering a petition for administrative mandate must defer to the [SPB's] factual findings if they are supported by substantial evidence." (*State Personnel Bd. v. Department of Personnel Admin.*, *supra*, at p. 522.) That standard of review is satisfied if the "record discloses substantial evidence (reasonable, credible and of solid value) such that a reasonable trier of fact could have found as it did." (*Parker v. State Personnel Bd.* (1981) 120 Cal.App.3d 84, 87.) In so doing, the trial court resolves all conflicts in the evidence and makes all reasonable inferences in favor of the SPB's decision. (*California Youth Authority v. State Personnel Bd.*, *supra*, 104 Cal.App.4th at pp. 584–586.) The trial court must uphold the SPB's (and the ALJ's, if adopted by the SPB) evidentiary rulings, unless there is a clear showing of abuse of discretion. (*Tudor Ranches*, *Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1431–1432.) Likewise, the trial court must uphold the SPB's decision regarding the penalty imposed unless the penalty is an abuse of discretion. (*Parks*, *supra*, 233 Cal.App.3d at pp. 831–832.) An abuse of discretion is shown where the action exceeds the bounds of reason. (*Ibid.*)

Review under the substantial evidence standard is highly deferential to the fact finder. (*Escobar v. Flores* (2010) 183 Cal.App.4th 737, 748.) Under this standard, the California Supreme Court has observed that it is "very difficult for a complaining employee to have the board's adverse factual findings overturned." (*State Bd. of Chiropractic Examiners v. Superior Court* (2009) 45 Cal.4th 963, 977.)

On appeal from the trial court's judgment, an appellate court reviews the SPB's decision, not the trial court's decision. We apply the same standards of review that the trial court applied. (*California Youth Authority v. State Personnel Bd.*, *supra*, 104 Cal.App.4th at p. 584.) We must uphold the SPB's factual findings if supported by substantial evidence. (*Valenzuela v. State Personnel Bd.* (2007) 153 Cal.App.4th 1179, 1184; *Parks*, *supra*, 233 Cal.App.3d at p. 823.) We do not reweigh the evidence. (*California Youth Authority*, *supra*, at p. 584; *Camarena v. State Personnel Bd.* (1997) 54 Cal.App.4th 698, 701.)

## II. The Credibility Findings Regarding Bautista's Testimony

Bautista contends the ALJ erred in finding he was not credible because his testimony conflicts with the testimony offered by Officers Vancine, Andes and Moreno, and Inmate Schafer.[5] He also contends the trial court erroneously "credited [Inmate] Martinez's report of Garcia's use of force to Correctional Lieutenant Jordan." He claims that because the inmate did not testify, his statements to the investigator are inadmissible hearsay, not subject to any recognized exception.

With specific regard to credibility determinations, the ALJ found Bautista's testimony was not to be believed because he often "gave convoluted, vague answers to simple questions" and "made numerous inconsistent statements regarding the incident." For example, Bautista told investigators that the inmate was compliant at the holding cell and walked in willingly. However, at the hearing Bautista testified he did not observe the inmate enter the holding cell. In contrast, the ALJ particularly noted the straightforward and professional testimony of both Vancine and Andes, and how that testimony was supported by the testimony of other witnesses. The ALJ also found Vancine, Andes, Moreno, and Kester were without motive to fabricate charges against Bautista. It was additionally noted that by revealing their initial incident reports were not accurate, Vancine and Andes exposed themselves to discipline. The ALJ determined that Bautista's testimony that he did not consider his actions or those of Garcia to amount to a

---

[5]We note Bautista has also failed to support his arguments by citation to authority. (Cal. Rules of Court, rule 8.204(a)(1)(B).) His brief contains but one citation found in the conclusion and it is utterly lacking in legal analysis. Every brief should contain legal argument that is supported by citation to the relevant legal authorities. If none is furnished, a court may treat the argument as waived and need not consider it. (*Estate of Randall* (1924) 194 Cal. 725, 728-729; *Estate of Hunt* (1939) 33 Cal.App.2d 358, 361; cf. *In re Marriage of Ananeh-Firempong* (1990) 219 Cal.App.3d 272, 278 [brief criticized as "almost devoid of legal authority" and as "little more than an invitation to reweigh the evidence"].)

To the degree Bautista's brief alleges certain findings were made by the trial court, it is inaccurate. The trial court merely reviewed the factual findings and credibility determinations made by the ALJ and adopted by the SPB. The trial court did not issue its own factual findings or credibility determinations.

reportable use of force was "patently unbelievable." The ALJ's credibility determination concluded as follows:

> "It is believed, then, that Garcia allowed Vancine to stay on the tier after being gassed, that he ordered Vancine to key the door to Cell 121, and that Vancine complied. It is also believed that Martinez did not resist during the escort or at the holding cell, but that Garcia slapped him during the escort; shoved him against the holding cell door; shoved him toward the back wall of the holding cell; and pushed his face against the back wall of that cell. It is further believed that Bautista, while actively engaged in controlling Martinez, saw Garcia's use of force during the escort and at the holding cell. Additionally, it is believed that [Garcia and Bautista] told Andes to report that he keyed the door, and Bautista told Vancine to report that Andes keyed the door. It is also believed that Kester told Garcia to sign his incident report, but he did not do so in an effort to cover up his use of force. Finally, it is believed that Bautista knowingly failed to report Garcia's use of force against Martinez for the purpose of covering up Garcia's misconduct."

At page 14 of his decision, the ALJ noted that Bautista's statements to investigators constituted dishonesty pursuant to Government Code section 19572, subdivision (f). Those statements included (1) Martinez was resistive during the escort and kept moving his head from side to side; (2) no force was used to put Martinez in the holding cell; (3) Andes keyed the door to cell 121; (4) he did not tell Vancine or Andes to report that Andes had keyed the door to cell 121; (5) he did not read Andes's report; and (6) his incident report was accurate.

Credibility is not a finding of fact subject to review for substantial evidence. Credibility is a determination made by the finder of fact that the witness is telling the truth. The finder of fact may base that determination on

> "any matter that has any tendency in reason to prove or disprove the truthfulness of his testimony at the hearing, including but not limited to any of the following:
>
> > "(a) His demeanor while testifying and the manner in which he testifies.
> >
> > "(b) The character of his testimony.

10.

"(c) The extent of his capacity to perceive, to recollect, or to communicate any matter about which he testifies.

"(d) The extent of his opportunity to perceive any matter about which he testifies.

"(e) His character for honesty or veracity or their opposites.

"(f) The existence or nonexistence of a bias, interest, or other motive.

"(g) A statement previously made by him that is consistent with his testimony at the hearing.

"(h) A statement made by him that is inconsistent with any part of his testimony at the hearing.…" (Evid. Code, § 780.)

In this matter, the credibility determinations are supportable. The ALJ saw the witnesses testify, observed their demeanor, and was uniquely situated to assess credibility. (*Wilson v. State Personnel Bd.* (1976) 58 Cal.App.3d 865, 877-878.) And, the testimony of a single witness can constitute substantial evidence and support a finding, even in the face of countervailing evidence. (*Phelps v. State Water Resources Control Bd.* (2007) 157 Cal.App.4th 89, 99.) Here, the ALJ specifically found the testimony of Vancine and Andes to be credible. Moreover, their testimony was supported by the testimony of other witnesses. The testimony offered by Vancine and Andes contradicted Bautista's testimony. Further, Bautista's testimony was characterized by the ALJ as convoluted, inconsistent, and "patently unbelievable." On this record, the ALJ's findings are supported by substantial evidence. There was substantial evidence to contradict the testimony offered by Bautista, as well as Garcia's testimony. Vancine, rather than Andes, keyed the door at Garcia's direction. Inmate Martinez was slapped by Garcia during the tier escort, and unnecessary force was used by Garcia when Martinez was placed in the holding cell. Further, there is substantial evidence to support the ALJ's findings that Bautista encouraged Vancine and Andes to report inaccurate information in their incident reports.

With regard to Bautista's reference to the use of Inmate Martinez's statements concerning the incident, we agree that Martinez's statements to Special Agent Gary Jordan are hearsay to which no exception applies.[6]  However, Government Code section 11513, subdivision (c) provides that administrative hearings

> "need not be conducted according to technical rules relating to evidence and witnesses, except as hereinafter provided.  Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions."

A victim's statement to an investigating agent is this type of evidence.  Subdivision (d) of Government Code section 11513 provides that hearsay "may be used for the purpose of supplementing or explaining other evidence," with the qualification that over timely objection such hearsay "shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions."

Here, Martinez's statements were used only to supplement or explain other evidence.  Additionally, while Bautista objected to the evidence, Martinez's statements were not the only evidence relied upon to support the ALJ's findings.

Bautista essentially asks us to reweigh the credibility of the witnesses against him.  As previously stated, however, it is not our function under the substantial evidence standard of review to reweigh the evidence or determine the credibility of witnesses.  Rather, we are to review the evidence for substantial evidence to support the SPB's findings.  And we make all reasonable inferences in favor of the SPB's decision.  (*California Youth Authority v. State Personnel Bd.*, *supra*, 104 Cal.App.4th at p. 584; *Valenzuela v. State Personnel Bd.*, *supra*, 153 Cal.App.4th at p. 1184; *Parks*, *supra*, 233 Cal.App.3d at pp. 831-832; *Camarena v. State Personnel Bd.*, *supra*, 54 Cal.App.4th at p.

---

[6]Martinez did not testify at the administrative hearing.  His statement was taken by Special Agent Jordan just prior to his having been released on parole.

701.) Having done so, we conclude the SPB's decision is supported by substantial evidence. No abuse of discretion occurred.

### III. The Findings that Bautista Failed to Report Garcia's Use of Force

Next, Bautista contends there is insufficient evidence he failed to report Garcia's use of force. More particularly, he contends that (1) because CDCR withdrew its allegations regarding use of force against Martinez at cell 121, there is no evidence Garcia used unnecessary force; (2) only Inmate Schafer observed unnecessary force used against Martinez during the tier escort, and his credibility is suspect; and (3) there is insufficient evidence Bautista had knowledge of Garcia's use of force at the holding cell. Bautista also questions the ALJ's findings regarding dishonesty as it relates to the keying of cell 121.

Initially, despite Bautista's assertion to the contrary, the ALJ did not fault Bautista for failing to report the use of force in cell 121. Rather, the ALJ expressly referenced the use of force during the escort and at the holding cell. Accordingly, we find his argument on this point fails.

With regard to the tier escort, Bautista contends Andes and Moreno did not observe any use of force by Garcia. He further contends Vancine did not remember any use of force on the tier and that he himself testified no force was used. Bautista asks us to infer that because only Inmate Schafer testified to observing Garcia's use of force, and because he is a convicted felon, Schafer's credibility is suspect. Bautista fails to recognize, however, that while Andes testified he did not *observe* the use of force during the tier escort, Andes *heard* force used. Specifically, Andes testified that he "heard a slap," "[l]ike a skin to skin, like a clap or skin to skin contact." Immediately thereafter, Andes heard Inmate Schafer say something like "[H]oly shit, he slapped him." Further, while Bautista characterizes Vancine's testimony as Vancine not remembering force being used during escort, the record establishes Vancine was not present during the entire escort. In fact, Vancine testified that after the inmate was removed from cell 121 and escorted onto the tier, he returned to the cell to retrieve his pepper spray and then pushed

13.

the hot food cart off of the tier. Therefore, in light of Andes's audible perception, Schafer's corroborating testimony, and the fact Vancine was otherwise occupied while the inmate was escorted off the tier, there is substantial evidence to support the ALJ's finding that Bautista failed to report Garcia's use of force on the tier.

There is also substantial evidence to support the ALJ's finding that Bautista failed to report Garcia's use of force at the holding cell. While Bautista himself testified that when they arrived at the holding cell he relinquished his hold on the inmate, allowed Garcia to take over, and turned away to remove his gloves, there is evidence to the contrary. Moreno testified Garcia and Bautista were holding Martinez against the closed holding cell door. Moreno also testified Bautista opened the holding cell door and placed the inmate inside. Consistent with Moreno's account, Andes testified force was used by Garcia against the inmate at the holding cell and that Bautista was present at that time. Vancine testified that when he arrived at the officers' station, Inmate Martinez was restrained and not resisting. Nevertheless, Vancine then observed Garcia strike the inmate in the upper torso, head, and neck. Vancine testified Bautista was standing to the left of the holding cell; Vancine did not recall whether Bautista was facing the cell. In light of this evidence, it was reasonable to conclude Bautista witnessed and failed to report Garcia's use of force at the holding cell.

Finally, with regard to Bautista's assertions there is insufficient evidence to support the ALJ's finding that he was dishonest, we disagree. Andes and Vancine testified Bautista encouraged them to inaccurately report that Andes rather than Vancine keyed the cell door. While Bautista testified otherwise, inconsistencies and conflicts are for the ALJ and SPB to resolve. Again, we do not reweigh evidence on review. (*California Dept. of Corrections v. State Personnel Bd.* (2004) 121 Cal.App.4th 1601, 1611; see also *Estate of Baker* (1982) 131 Cal.App.3d 471, 483.)

In sum, reviewing all the evidence and reasonable inferences in favor of the SPB's decision, we conclude it is supported by substantial evidence. (*California Youth Authority v. State Personnel Bd.*, *supra*, 104 Cal.App.4th at p. 584; *Valenzuela v. State*

14.

*Personnel Bd.*, *supra*, 153 Cal.App.4th at p. 1184; *Parks*, *supra*, 233 Cal.App.3d at pp. 831-832; *Camarena v. State Personnel Bd.*, *supra*, 54 Cal.App.4th at p. 701.)

## DISPOSITION

The trial court's denial of Bautista's petition for writ of administrative mandate is affirmed.  As the prevailing party, respondents may recover their costs on appeal, if any. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____

PEÑA, J.

WE CONCUR:


_____

KANE, Acting P.J.


_____

FRANSON, J.

15.