Filed 12/6/21  Montoya v. State Personnel Board CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| NATIVIDAD MONTOYA,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>STATE PERSONNEL BOARD,<br><br>    Defendant and Respondent;<br><br>DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>    Real Party in Interest and Respondent. | F079566<br><br>(Kern Super. Ct. No. BCV-18-101662)<br><br><br>**ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is hereby ordered that the opinion filed herein on November 5, 2021, be modified as follows:

1.  In the caption, "REHABLITATION" is deleted and "REHABILITATION" is inserted to reflect Real Party in Interest and Respondent:  "DEPARTMENT OF CORRECTIONS AND REHABILITATION."

This modification does not effect a change in the judgment.

HILL, P. J.

WE CONCUR:


SMITH, J.


SNAUFFER, J.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| NATIVIDAD MONTOYA,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>STATE PERSONNEL BOARD,<br><br>Defendant and Respondent;<br><br>DEPARTMENT OF CORRECTIONS AND REHABLITATION,<br><br>Real Party in Interest and Respondent. | F079566<br><br>(Super. Ct. No. BCV-18-101662)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Eric Bradshaw, Judge.

Castillo Harper and Michael A. Morguess for Plaintiff and Appellant.

Heather Lynne Glick for Defendant and Respondent.

Krista Dunzweiler, Christopher D. Howard and Kristina M. Lee for Real Party in Interest and Respondent.

-ooOoo-

Appellant Natividad Montoya was dismissed from her employment as a correctional officer at Wasco State Prison (WSP) by the Department of Corrections and Rehabilitation (CDCR). CDCR took this action against Montoya because it determined she had altered a Family and Medical Leave Act (FMLA)[1] form completed by a health care provider. The form provided an estimate by the health care provider of how much leave time Montoya would need to accommodate her mother's medical care. It was undisputed that *someone* had altered the form, changing the leave time indicated therein from two days per month to 12 days per month. Montoya denied doing so and claimed the alteration must have occurred after she delivered the form to the WSP Personnel Office (personnel office), noting there was an employee in the personnel office who had a reason to have a grudge against her. CDCR concluded from the circumstances that it was Montoya who altered the form, and therefore it terminated her employment.

Montoya appealed her dismissal to the State Personnel Board (the Board), who assigned the matter to an administrative law judge (ALJ) to conduct an evidentiary hearing. After the hearing was held, the ALJ issued a proposed decision finding that CDCR had failed to prove the alleged misconduct by a preponderance of the evidence and recommending that Montoya's dismissal be revoked. The ALJ relied on Montoya's credible demeanor while testifying and on an evaluation of the circumstantial evidence. The Board rejected the ALJ's proposed decision and elected to independently review the case. Based on its consideration of the record, the Board issued a final decision holding that the circumstantial evidence established Montoya "altered the FMLA form to falsely state that she was entitled to 12 days of FMLA leave per month, rather than the two days of leave approved by her mother's health care provider." The Board further concluded that dismissal from employment was the appropriate penalty.

---

[1] The Family and Medical Leave Act of 1993 is set forth in title 29 United States Code sections 2601 through 2654. (See also 29 C.F.R. § 825.100.)

Montoya sought judicial review of the Board's decision by filing a petition for writ of administrative mandate in the trial court. The trial court denied the petition, noting the Board's decision was supported by substantial evidence. Montoya appeals from the resulting judgment. In her appeal, Montoya contends the Board and the trial court failed to follow a statutory requirement to apply "great weight" to the ALJ's credibility-based determination (i.e., CDCR failed to prove Montoya altered the form) to the extent that (i) it was substantially based on the credibility of a witness (i.e., Montoya) and (ii) the finding of credibility was due to the ALJ's observation of the witness's demeanor, manner, or attitude. (See Gov. Code, § 11425.50, subd. (b).) For reasons explained hereinbelow, we agree with Montoya's contention. Accordingly, we will reverse the judgment with directions to the trial court to enter a new judgment granting Montoya's petition for writ of administrative mandate.

## FACTS AND PROCEDURAL HISTORY

Montoya commenced her career as a correctional officer at WSP in 2004. Beginning in 2010, Montoya has applied annually for and obtained FMLA leave to provide time to help to her mother who has a medical condition for which she needs Montoya's intermittent assistance including transportation to and from regular medical appointments.[2] Since 2010, Montoya has used her monthly FMLA leave on an as-needed basis, depending on the severity of her mother's medical condition. As a result, in some months Montoya used more than the approved number of FMLA leave days, while in others she used fewer than the approved number of FMLA leave days. Montoya has never been admonished or counseled for exceeding her approved FMLA leave.

---

[2] Montoya did not obtain FMLA leave in 2013; due to a work-related injury, she did not work the requisite number of hours to qualify.

Montoya's Form 2201 Completed by Health Care Provider

On November 30, 2015, Montoya obtained from WSP the required FMLA renewal documents for the 2016 calendar year, including a "Certification of Health Care Provider" form "CDCR 2201" (Form 2201). A significant portion of Form 2201 must be completed and signed by the relevant health care provider. Montoya delivered Form 2201 to her mother's health care provider. When Form 2201 was picked up by Montoya on December 17, 2015, it stated the health care provider's estimate that Montoya would need *two days per month* leave time to assist her mother with medical appointments and other needs. From December 17, 2015, until December 23, 2015, Montoya was the only person in possession of Form 2201.

Form 2201 Submitted by Montoya to Personnel Office

On December 23, 2015, Montoya personally delivered her completed Form 2201 to the personnel office. When she submitted the form, she asked the personnel office employee to give her a copy. According to Montoya, the copy she received from the personnel office did not have a date stamp on it. She recalled that the personnel office was very busy at that time.[3]

Ordinarily, FMLA documents are processed by the personnel office in the following manner: the submitted documents are date stamped then delivered to David Ackman, an office assistant responsible for logging receipt of FMLA documents. Ackman's desk or inbox is in an open area in the personnel office that is accessible to other employees who work in the personnel office. When Ackman completes his part of

---

[3] Montoya testified that, on prior occasions, she received copies from the personnel office of submitted FMLA documents which, as in this instance, were not date stamped. In contrast, Acting FMLA Coordinator Teresa Tellechea testified that the personnel office's customary practice is to date stamp submitted FMLA documents before providing a copy to the person who submitted it. She admitted it was possible for someone to get a non-date-stamped copy, but believed it was not likely.

the process, the FMLA documents are then provided to the FMLA coordinator for review and approval.

Personnel Office Discovers Form 2201 Was Altered

On December 30, 2015, one week after its submittal by Montoya, Tellechea reviewed Montoya's Form 2201. In reviewing the form, Tellechea noticed the health care provider's estimate of Montoya's need for FMLA leave showed that Montoya would require *12 days off* per month. This number seemed too high and appeared inconsistent with the fact that the Form 2201 only indicated two medical visits per month for Montoya's mother. Tellechea contacted the health care provider to clarify the apparent inconsistency. The health care provider faxed to Tellechea a copy of Montoya's Form 2201. The form Tellechea received from the health care provider showed a "2" as the estimated number of days off needed per month. Based on a comparison of the personnel office's copy of Montoya's Form 2201 with the copy faxed by the health care provider, Tellechea concluded that the Form 2201 submitted by Montoya to the personnel office had been altered by someone inserting a "1" in front of the "2" in the space for estimated days off, thereby changing the estimated days off from "2" to "12" per month. Tellechea reported the Form 2201 alteration to her supervisor.

On January 5, 2016, WSP approved Montoya's request for FMLA leave during 2016 at a frequency of two days per month. Montoya did not question this determination. During 2016, Montoya continued to use FMLA leave as needed, depending on her mother's condition. In some months during 2016, she exceeded the approved leave of two days per month, in other months she used fewer than the two days. Each time Montoya used FMLA leave, she reported her usage on her monthly timesheet.

Office of Internal Affairs Investigation

In September 2016, in an investigation conducted by CDCR's Office of Internal Affairs (OIA), Montoya was interviewed by OIA Special Agent Sammy Ramirez. During that interview, Montoya provided Ramirez with what she said was the copy of

5.

Form 2201 given to her by the personnel office at the time she submitted it on December 23, 2015. Ramirez showed Montoya a copy of the Form 2201 from the personnel office, which indicated 12 days of leave time. Montoya denied altering the document; she denied putting a "1" in front of the "2." Montoya did not know how the form was altered, but she informed Ramirez that in December 2015, she had a problem getting her prior month's overtime check processed by Personnel Specialist Heidi Loyog, and the problem got to the point that Montoya spoke to her union representative about it, who in turn spoke to the warden, which led to the warden contacting the personnel office.[4] According to Montoya, the overtime payment problem was not resolved until one or two days before she dropped off Form 2201.

CDCR's Notice of Adverse Action

Following the investigation by OIA, on November 29, 2016, CDCR issued a notice of adverse action dismissing Montoya from her employment as a correctional officer. The basis for this adverse action was CDCR's conclusion that Montoya altered or falsified Form 2201, changing the two days of leave estimated by the health care provider to 12 days, and did not tell the truth when investigated by OIA.

Montoya's Administrative Appeal Heard and Decided by the ALJ

Montoya timely appealed her dismissal to the Board. The Board set the matter for an evidentiary hearing before an ALJ, which was held on May 3 and 4, 2017.

On June 12, 2017, the ALJ issued her proposed decision in the matter. The ALJ found that Montoya testified in a "clear and forthright manner, she listened intently to the questions asked, and she answered articulately and without evasiveness." Further, although Montoya had an inherent bias in the sense that she hoped to be reinstated into

---

[4] Montoya's union representative, Correctional Officer William Pitcher, testified at the hearing and corroborated that after Montoya told him about the difficulty she was having getting paid her overtime on a timely basis, he contacted the chief deputy warden on December 21 or 22, 2015, who then contacted the personnel office.

her employment, other evidence tended to corroborate Montoya's testimony. In contrast to its observations of the character of Montoya's testimony, the ALJ found that the circumstantial evidence relied upon by CDCR was not sufficiently persuasive or convincing to show by a preponderance of the evidence that Montoya altered Form 2201.[5] Accordingly, the ALJ's proposed decision recommended that CDCR's adverse action against Montoya, including the dismissal, should be revoked.

Because the principal issue raised on appeal concerns the ALJ's credibility findings as to Montoya's testimony, we quote at length from the ALJ's discussion on the matter of Montoya's credibility and how Montoya's testimony weighed against the circumstantial evidence. Under the heading in the proposed decision entitled "Credibility Determination" (boldface, underlining, & some capitalization omitted), the ALJ stated as follows:

> "[Montoya's] testimony conflicted with [CDCR's] circumstantial evidence on the subject of whether [Montoya] altered the Form 2201. This conflict warrants a credibility determination using the criteria set forth in Evidence Code section 780.[6]

> "[CDCR] presented no direct evidence that [Montoya] altered Form 2201.… Instead, [CDCR] relied on circumstantial evidence, emphasizing 1) [Montoya's] possession of Form 2201 from the time the health care provider completed it to the time [Montoya] submitted it to the Personnel

[5] The ALJ correctly noted that in a disciplinary appeal, the appointing power must prove the charges against the employee by a preponderance of the evidence, which is " 'evidence that has a more convincing force than that opposed to it.' " (*Glage v. Hawes Firearms Co.* (1990) 226 Cal.App.3d 314, 324.)

[6] "Evidence Code section 780 provides in pertinent part: [¶] Except as otherwise provided by statute, the court or jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his testimony at the hearing, including but not limited to any of the following: [¶] (a) His demeanor while testifying and the manner in which he testifies. [¶] (b) The character of his testimony. [¶] (c) The extent of his capacity to perceive, to recollect, or to communicate any matter about which he testifies. [¶] (d) The extent of his opportunity to perceive any matter about which he testifies. [¶] … [¶] (f) The existence or nonexistence of a bias, interest, or other motive .… [¶] (h) A statement made by him that is inconsistent with any part of his testimony at the hearing."

Office; 2) [Montoya's] personal benefit from altering Form 2201; and, 3) [Montoya's] excessive use of FMLA leave during 2016.

"[Montoya] denied altering Form 2201, both during her Investigatory Interview and while testifying at the hearing. [Montoya] also testified she had, since 2010, used FMLA leave as needed, depending on the severity of [her mother's] medical condition, and that although she sometimes exceeded the authorized FMLA leave frequency, she believed she was using her FMLA leave appropriately since she had never been counseled or reprimanded for using FMLA leave. [Montoya] testified in a clear and forthright manner, she listened intently to the questions asked, and she answered articulately and without evasiveness. Notably, though, [Montoya] has an inherent bias and an incentive to present her testimony favorably, since she seeks reinstatement to her employment with CDCR.

"However, [Montoya's] testimony was corroborated by documentary evidence showing both that [Montoya] has occasionally exceeded her monthly approved FMLA leave since 2011, and [CDCR] has been fully aware of it. In addition, Tellechea's testimony that she was never alerted to [Montoya's] excessive FMLA leave usage in 2016 supports [Montoya's] testimony that [Montoya] was never counseled regarding excessive FMLA leave usage.

"[Montoya's] longstanding practice of using FMLA leave as needed, even if it exceeded the monthly-authorized amount, along with [Montoya's] belief her FMLA leave usage was appropriate, reduces the likelihood [Montoya] would alter her Form 2201 to acquire additional approved leave time. For this reason, [CDCR's] assertion that [Montoya] altered Form 2201 based on [Montoya's] subsequent excessive 2016 FMLA leave usage, is not persuasive.

"As to [CDCR's] remaining assertions, it is undisputed that [Montoya] was the only person in possession of the completed FMLA documents between December 17, 2015, and December 23, 2015. [CDCR] asserts [Montoya] altered Form 2201 during this timeframe. However, after [Montoya] submitted the FMLA documents to the WSP Personnel Office on December 23, 2015, they were unaccounted for until December 30, 2015, when Tellechea reviewed Form 2201 and first discovered the alteration. There is no evidence of where the documents were or who handled them between December 23, 2015, and December 30, 2015. Even assuming, *arguendo*, the standard procedure was followed, and [Montoya's] FMLA documents were placed in Ackman's box on December 23, 2015, there is no evidence of how long they remained in that open area,

available and accessible to 25 other employees. [CDCR's] failure to present any evidence establishing that Form 2201 could not have been altered between December 23, 2015, and December 30, 2015, reduces the persuasiveness of [CDCR's] assertion that [Montoya] must have altered Form 2201 between December 17, 2015, and December 23, 2015.

"In addition, [Montoya] testified that over the course of a week, Loyog delayed [Montoya's] overtime check, gave [Montoya] inconsistent answers about the check's status, and the matter was only resolved after a telephone call by [Chief Deputy Warden John] Sutton. [Montoya's] testimony in this regard was corroborated by Pitcher's testimony. Through this testimony, [Montoya] raised an issue of potential animosity by Loyog toward [Montoya], which, if true, provides Loyog with a potential motive to alter [Montoya's] Form 2201. [CDCR] presented no evidence to refute, discount, or impeach [Montoya's] testimony on this subject.

"Based on the foregoing, [CDCR's] reliance on the circumstantial evidence is not persuasive to compel a finding that [Montoya] altered Form 2201."

The Board Rejects the ALJ's Proposed Decision

On September 6, 2017, the Board issued a ruling rejecting the ALJ's proposed decision and announcing that the Board "will decide the case based upon the record, including the transcripts." The Board also invited further argument and briefing on the issue of whether CDCR established the charges by a preponderance of the evidence.

The Board's Final Decision

On April 12, 2018, the Board issued its final decision entitled "Board Decision and Order." (Boldface & some capitalization omitted.) It stated: "[T]he Board finds that the circumstantial evidence established that [Montoya] altered [Form 2201] to falsely state that she was entitled to 12 days of FMLA leave per month, rather than the two days of leave approved by her mother's health care provider. The Board further concludes that the penalty of dismissal is just and proper to address [Montoya's] dishonesty as a peace officer."

In explaining its decision, the Board emphasized its view of the circumstantial evidence, stating as follows: "It is undisputed that the Form 2201 reviewed by Tellechea

was date-stamped December 23, 2015 and was altered to show 12 days per month of estimated FMLA leave needed. The evidence established, moreover, that [Montoya] had sole possession of the completed form from the time she picked it up from [the health care provider] on December 17, 2015 until she delivered it to the WSP Personnel Office on December 23, 2015. The evidence also established that the practice within the Personnel Office was to date-stamp documents before giving a copy to the employee, if requested, and then to deliver them directly to the inbox of Office Assistant David Ackerman to input into a spreadsheet and then forward it to the FMLA Coordinator's inbox. No other Personnel Office employee would have any reason to access FMLA documents that had been submitted until after final approval was given by Tellechea. Only after that approval was given would the employee's assigned personnel specialist then track the employee's use of approved FMLA leave."

According to the Board, these circumstances supported the inference that Montoya submitted an altered Form 2201 to the personnel office. The Board also concluded that no other person stood to gain by altering the form. Although Montoya had been historically using FMLA leave on an as needed basis, and sometimes had exceeded the approved FMLA leave time in a given month, the Board nonetheless concluded that Montoya had a motive to alter the form because she "knew that she was not authorized to do so and that she could have been challenged at any time." As to Montoya's contention that Loyog might have had a motive and opportunity to alter the form due to the problems Montoya had with Loyog about overtime payment delays leading to the warden's phone call, the Board characterized that theory as mere speculation.

In footnote 6 of its decision, the Board addressed the ALJ's credibility determination regarding Montoya's testimony. The Board explained: "While [the] Board customarily defers to an ALJ's credibility determinations when they are based upon the observed demeanor, manner, or attitude of the witness…, an ALJ's credibility determinations are not binding on the Board. [Citations.] In this case, the ALJ's

10.

credibility determinations were primarily based not upon [Montoya's] observed demeanor, manner or attitude at the hearing but upon the ALJ's determination that [CDCR's] circumstantial evidence was insufficient to support the charges. As set forth in this Decision, the Board finds the evidence in the record sufficient to support the finding that [Montoya] altered her Form 2201 prior to submitting it to the WSP Personnel Office."[7]

The Board concluded that Montoya had deliberately falsified Form 2201. Since such dishonesty by a peace office "cannot be tolerated," the appropriate penalty was held to be dismissal. Therefore, the Board sustained CDCR's decision to terminate Montoya's employment.

Trial Court Denies Writ Administrative of Mandate

On July 11, 2018, Montoya filed a petition for writ of administrative mandate. The trial court denied the petition on the ground that there was substantial evidence in the record tending to support a reasonable inference that Montoya altered Form 2201 after it had been completed and signed by the health care provider. Judgment was entered against Montoya on June 24, 2019. Montoya's timely notice of appeal followed.

## DISCUSSION

### I. Standard of Review

The Board is the state agency vested with authority to review disciplinary actions taken against public employees. (*Gonzalez v. State Personnel Bd.* (1995) 33 Cal.App.4th 422, 428.) In undertaking that review, the Board acts in an adjudicatory capacity under powers granted by the California Constitution. (*Fisher v. State Personnel Bd.* (2018) 25 Cal.App.5th 1, 13.) Therefore, " '[o]n review the decisions of [the Board] are entitled to judicial deference. The record must be viewed in a light most favorable to the decision

---

[7] We note the ALJ never said that the circumstantial evidence could not be sufficient to support the allegations, but only that under the facts of this case, the circumstantial evidence was not persuasive or convincing.

11.

of [the Board] and its factual findings must be upheld if they are supported by substantial evidence.' " (*California Youth Authority v. State Personnel Bd.* (2002) 104 Cal.App.4th 575, 584 (*California Youth Authority*); accord, *Larson v. State Personnel Bd.* (1994) 28 Cal.App.4th 265, 273.)

The Board's decision in this case was challenged in the trial court on a petition for writ of administrative mandate pursuant to Code of Civil Procedure section 1094.5. Under Code of Civil Procedure section 1094.5, subdivision (c), an abuse of discretion is established " 'if the court determines that the findings are not supported by substantial evidence in the light of the whole record.' " (*California Youth Authority*, *supra*, 104 Cal.App.4th at p. 584.) The trial court reviews the decision of the Board for substantial evidence, considering all relevant evidence in the administrative record including evidence that fairly detracts from the evidence supporting the agency's decision. (*Cate v. State Personnel Bd.* (2012) 204 Cal.App.4th 270, 281 (*Cate*).)

In addition, Government Code section 11425.50[8] "provides a specific method for court review of the administrative agency's determination of credibility." (*Cate*, *supra*, 204 Cal.App.4th at p. 281.) In relevant part, this statute provides as follows: "If the factual basis for the decision includes a determination based substantially on the credibility of a witness, the statement shall identify any specific evidence of the observed demeanor, manner, or attitude of the witness that supports the determination, and on judicial review the court shall give great weight to the determination to the extent the determination identifies the observed demeanor, manner, or attitude of the witness that supports it." (§ 11425.50, subd. (b); hereafter § 11425.50(b).) Section 11425.50(b) is applicable to Board adjudications of public employee disciplinary proceedings. (*Cate*, *supra*, 204 Cal.App.4th at p. 282.)

---

[8] All further statutory references are to the Government Code unless otherwise indicated.

12.

The scope of our review from a judgment on a petition for writ of administrative mandate is the same as that of the trial court. (*Cate*, *supra*, 204 Cal.App.4th at p. 282.) "In reviewing a decision of the Board on a petition for administrative mandamus, we stand in the same shoes as the trial court, applying the substantial evidence rule." (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1632.) On appeal, " '[w]e do not reweigh the evidence; we indulge all presumptions and resolve all conflicts in favor of the [B]oard's decision. Its findings come before us "with a strong presumption as to their correctness and regularity." [Citation.] We do not substitute our own judgment if the [B]oard's decision " ' "is one which could have been made by reasonable people…." ' " ' " (*California Youth Authority*, *supra*, 104 Cal.App.4th at p. 584, quoting *Camarena v. State Personnel Bd*. (1997) 54 Cal.App.4th 698, 701.) "Substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. (*Hosford v. State Personnel Bd*. (1977) 74 Cal.App.3d 302, 307.)

The manner of judicial review where section 11425.50(b) is concerned requires some further elaboration. The trial court, as the initial reviewing court on a petition for writ of administrative mandate, is required to give great weight to factual determinations substantially based on credibility findings when the conditions of section 11425.50(b) are satisfied. (See *Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 819.) On appeal, our review of the Board's decision for substantial evidence is also to be informed by that special evidentiary standard (i.e., great weight); that is, a Court of Appeal is likewise a "court" providing "judicial review" under section 11425.50(b). In other words, as we have noted, the scope of an appellate court's review in this context is the same as that of the trial court. Presumably, then, if the statutory provision to give great weight to a credibility determination is applicable in a given case, our task would be to consider whether substantial evidence reasonably supported the Board's decision even when great weight is given to the credibility determination. (See *California Youth Authority*, *supra*,

13.

104 Cal.App.4th at p. 596 [declining to give special weight on appeal to the ALJ's credibility finding since the ALJ failed to identify observed demeanor of the witness].)[9]

## II. An Overview of the Scope of Section 11425.50(b)

As the language of section 11425.50(b) makes clear, the rule that a reviewing court is to give great weight to certain findings does not apply to all determinations based on a witness's credibility, but only to those (i) "based *substantially*" on the credibility of the witness, and only (ii) "*to the extent*" the credibility finding is expressly premised on the observed demeanor, manner, or attitude of the witness. (§ 11425.50(b), italics added.)

As was recognized in *California Youth Authority*, *supra*, 104 Cal.App.4th 575, section 11425.50(b) applies to credibility determinations made *by the ALJ* in a proposed decision, even if ultimately rejected by the Board, where the ALJ was the presiding officer in the administrative hearing who personally observed the witness's demeanor. (*Id*. at pp. 589–595.) Thus, the statutory rule is not limited to situations in which the Board formally adopts the credibility findings of the ALJ, but it also applies to the ALJ's credibility findings (where the conditions of the statute are satisfied) that are rejected by the Board. (*Id*. at p. 595 [holding the statutory rule applies "to both [Board] decisions and determinations by the ALJ in [Board] administrative adjudications concerning employment disciplinary actions"].) Here, as noted above, the Board rejected the ALJ's credibility findings relating to Montoya's testimony. Therefore, in the present appeal we must consider *the ALJ's* credibility findings relating to Montoya's testimony to ascertain whether, under section 11425.50(b), great weight should have been applied to the ALJ's determinations based thereon.

---

[9] To some extent, at least, this would appear to require some weighing of evidence, notwithstanding the traditional rule against weighing evidence under the substantial evidence test.

Appellate decisions have further explained the Legislature's intent in enacting section 11425.50(b) by making reference to the clarifying comments provided by the California Law Revision Commission: "The California Law Revision Commission commented that this provision 'adopts the rule of *Universal Camera Corp. v.* [*Labor Bd.* (1951)] 340 U.S. 474 …, requiring that the reviewing court weigh more heavily findings by the trier of fact (the presiding officer in an administrative adjudication) based on observation of witnesses than findings based on other evidence.' " (*California Youth Authority*, *supra*, 104 Cal.App.4th at pp. 587–588, italics added, fn. omitted, quoting 25 Cal. Law Revision Com. Rep. (1995) p. 160; accord, *Cate*, *supra*, 204 Cal.App.4th at p. 282.)

How this statutory provision plays out is also clarified by the California Law Revision Commission's comments: "As reflected in the [California] Law Revision Commission comments to section 11425.50: 'Findings based substantially on credibility of a witness must be identified by the presiding officer in the decision made in the adjudicative proceeding.… However, the presiding officer's identification of such findings is not binding on the agency or the courts, which may make their own determinations whether a particular finding is based substantially on credibility of a witness. *Even though the presiding officer's determination is based substantially on credibility of a witness, the determination is entitled to great weight only to the extent the determination derives from the presiding officer's observation of the demeanor, manner, or attitude of the witness.* Nothing in [11425.50](b) precludes the agency head or court from overturning a credibility determination of the presiding officer, after giving the observational elements of the credibility determination great weight, whether on the basis of nonobservational elements of credibility or otherwise.' " (*California Youth Authority*, *supra*, 104 Cal.App.4th at p. 588, quoting 25 Cal. Law Revision Com. Rep., *supra*, at p. 161; accord, *Cate*, *supra*, 204 Cal.App.4th at p. 282; *San Diego Unified School Dist. v. Commission on Professional Competence* (2013) 214 Cal.App.4th 1120, 1147.)

## III. The Nature of the ALJ's Credibility Determination

To ascertain whether section 11425.50(b) would require that great weight be accorded to the ALJ's credibility determination,[10] it is necessary to carefully examine the nature and context of that determination.

In the proposed decision, the ALJ made findings regarding the credibility of Montoya's testimony, and, after also weighing the circumstantial evidence, concluded that CDCR had failed to convincingly prove by a preponderance of the evidence that Montoya altered Form 2201. Under the heading in the proposed decision entitled "Credibility Determination" (boldface, underlining, & some capitalization omitted), the ALJ pointed out that a conflict in the evidence existed between Montoya's testimony and the circumstantial evidence relied on by CDCR. The ALJ stated "[t]his conflict warrants a credibility determination using the criteria set forth in Evidence Code section 780." In summarizing Montoya's testimony, the ALJ noted that Montoya denied altering Form 2201 and also testified that she had, since 2010, used FMLA leave as needed, depending on the severity of her mother's condition; although she sometimes exceeded the approved leave days for a given month, she believed she was using her FMLA leave appropriately since she had never been counseled or reprimanded. With regard to Montoya's testimony, the ALJ then made the following observations: "[Montoya] testified in a clear and forthright manner, she listened intently to the questions asked, and she answered articulately and without evasiveness." We hold this was sufficient to meet the condition of section 11425.50(b) that the presiding officer's credibility findings be expressly based on first-hand observation of the demeanor, manner, or attitude of the witness.

---

**10** We recognize that the language of the statute refers to "a determination based substantially on the credibility of a witness." (§ 11425.50(b).) For ease of expression, we have at times shortened this phrase in our discussion to a credibility determination or finding.

The ALJ next evaluated the circumstantial evidence presented by CDCR (i.e., relating to existence of motive and opportunity) and found it to be unpersuasive under the facts and circumstances of this case.[11] As to motive, the ALJ found that Montoya's longstanding practice of using FMLA leave as needed, even if occasionally exceeding the monthly authorized amount, "reduces the likelihood" she would alter her Form 2201 to acquire additional approved leave time. The ALJ held that "[f]or this reason, [CDCR's] assertion that [Montoya] altered Form 2201 based on [her] subsequent excessive 2016 FMLA leave usage, is not persuasive."

Additionally, as to opportunity, although it was undisputed that Montoya had sole possession of Form 2201 from the time she retrieved it from the health care provider until it was submitted to the personnel office on December 23, 2015, it was also undisputed that after its submittal to the personnel office Form 2201 was in an open and accessible location while on Ackman's desk. Therefore, the possibility existed that Montoya's Form 2201 could have been altered between December 23, 2015, and December 30, 2015. According to the ALJ, this "reduces the persuasiveness" of CDCR's assertion that Montoya "*must have* altered Form 2201 between December 17, 2015, and December 23, 2015." (Italics added.) Moreover, there was unrefuted testimony of the overtime payment problem experienced by Montoya in her dealings with Loyog, which issue resulted in the personnel office being called by the warden. This indicated at least potential animosity may have existed on Loyog's part toward Montoya only a day or two before Form 2201 was dropped off at the personnel office. For all these reasons, the ALJ found that CDCR's "reliance on the circumstantial evidence is not persuasive to compel a finding that [Montoya] altered Form 2201."

---

[11] Again, contrary to the Board's characterization of the ALJ's proposed decision, the ALJ did not hold the circumstantial evidence was not competent or probative evidence, but only that it was not persuasive or convincing in this case.

17.

From the foregoing, it is apparent that the ALJ based her proposed decision—i.e., that CDCR failed to meet its burden of proving Montoya altered the Form 2201—on a combination of two important factors:  (i) Montoya's testimony appeared forthright and credible; and (ii) the circumstantial evidence was relatively unpersuasive under all the circumstances.  Because, as the ALJ observed, Montoya's testimony and the circumstantial evidence were *in conflict*, to resolve that conflict in the evidence the ALJ had to decide which was more persuasive relative to the other.  Therefore, when the ALJ resolved the case in Montoya's favor, that constituted a determination that was *substantially based* on Montoya's credibility.

The Board's decision took the position it could disregard the ALJ's credibility findings because, in the Board's view, the determination of the main issue in the case (i.e., whether Montoya altered Form 2201) was not based *substantially* on Montoya's credibility, but was merely or primarily based on the ALJ deeming the circumstantial evidence to be insufficient.  We understand the thrust of the Board's argument on this point.  The statutory provision only applies to determinations "substantially" based on credibility.  (§ 11425.50(b).)  Moreover, as reflected in the California Law Revision Commission's comments, the Board may reach its own conclusion from the record on whether a particular determination by the ALJ was substantially based on the ALJ's observation of a witness's credibility.  (*California Youth Authority*, *supra*, 104 Cal.App.4th at p. 588 [quoting 25 Cal. Law Revision Com. Rep., *supra*, at p. 161 as follows:  "the presiding officer's identification of such findings is not binding on the agency or the courts, which may make their own determinations whether a particular finding is based substantially on credibility of a witness"].)  However, the record provides no support for that finding by the Board, and therefore we are constrained to reject it.

As we have explained above, the ALJ indicated there were two conflicting sources of evidence, each having some probative value:  namely, Montoya's testimony and the

18.

circumstantial evidence relied upon by CDCR. Each had to be weighed and evaluated against the strength or convincing force of the other. By resolving this evidentiary conflict in favor of Montoya, the ALJ clearly sided with Montoya's testimony even if the ALJ also recited reasons the circumstantial evidence was ultimately unpersuasive. Inasmuch as the outcome depended on which source of evidence—Montoya's credible testimony or CDCR's circumstantial evidence—was more convincing relative to the other, it necessarily follows that the ALJ's credibility determination was a substantial or material ground for the result reached by the ALJ in this case. On this record, we conclude as a matter of law that the ALJ's determination was *substantially*, even if not wholly or exclusively, based on the observed credibility of Montoya's testimony.

In light of the foregoing, we hold that the conditions for applicability of section 11425.50(b) have been met, and, consequently, great weight must be given to the ALJ's credibility determination as to Montoya's testimony.

## IV. Application of Great Weight Rule Requires Reversal

The Board disregarded the ALJ's credibility determination regarding Montoya's testimony, essentially giving that determination no weight, and the trial court affirmed the Board's decision without any meaningful analysis. As we have concluded above, we are required under section 11425.50(b) to give great weight to the ALJ's determination crediting Montoya's testimony. When great weight is accorded to her testimony, including that she did not alter the form and had no reason to do so in light of her historical use of FMLA leave as needed, and when we consider the relatively inconclusive nature of the circumstantial evidence on the other side of the scale (i.e., Montoya's sole possession of Form 2201 prior to its submission to the personnel office; the customary procedures within the personnel office; Montoya's copy of Form 2201 was not date stamped; and Montoya's usage of FMLA leave in 2016 sometimes exceeded her allotted leave time per month), there can be but one outcome to this appeal. That is, upon giving the ALJ's credibility-based determination stemming from the observed demeanor

19.

of Montoya's testimony great weight, as we must, it is apparent that no reasonable trier-of-fact could conclude that the remaining evidence in this case was capable of overcoming that great weight or of showing otherwise. Accordingly, for all of the foregoing reasons, we reverse the judgment of the trial court.

## **DISPOSITION**

The judgment is reversed, and the matter is remanded to the trial court with directions to enter a new judgment granting Montoya's petition for writ of administrative mandate. Montoya is entitled to her costs on appeal.


HILL, P. J.

WE CONCUR:


SMITH, J.


SNAUFFER, J.

20.